**In re Katherine M.J. McGREGOR, a/k/a Mary Jo K. Higginbotham, Debtor.**

**Bankruptcy No. 94–41302–JFQ.**

United States Bankruptcy Court, D. Massachusetts.

Oct. 21, 1994.

**719**

Ralph Stein, Salem, NH, for Katherine M.J. McGregor.

Richard Askenase, Shapiro & Kreisman, Framingham, MA, for Countrywide Funding Corp.

### OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

Katherine M.J. McGregor (the "Debtor") proposes a chapter 13 plan which bifurcates a thirty year mortgage on her four-unit apartment building into secured and unsecured portions, reduces the interest rate from 10½% to 8%, and pays the secured portion over the twenty-two years remaining under the mortgage note. The questions presented, in addition to feasibility, are (i) whether the Debtor's use of one of the units as a residence prohibits bifurcation, (ii) whether the proposed modification requires that payments be completed during the five year life of the plan, and (iii) if the plan as proposed must be completed during five years, whether bifurcation can be accomplished without a change in the interest rate so long as defaults are cured and monthly payments called for by the note are made until the secured portion of the claim is paid in full. I hold bifurcation is permissible, but the Debtor must keep the same interest rate and make the payments required by the note until the secured portion of the claim is paid in full.

On October 15, 1986, the Debtor and her former husband obtained a loan of $211,500.00 from National Mortgage Co., Inc. The loan was secured by a first mortgage on real estate at 33 Summit Street, Haverhill, Massachusetts. It was evidenced by a note payable over thirty years, bearing interest at 10.5% per annum. The note has since been assigned to Countrywide Funding Corporation ("Countrywide"), which objects to the Debtor's plan.

On March 25, 1994, the Debtor filed a petition for relief under Chapter 13. As of the petition date, the principal balance of Countrywide's mortgage was $202,792.93. Countrywide filed a proof of claim on March 30, 1994 for $43,170.78, which includes 14 outstanding pre-petition mortgage payments, along with costs and interest. The fair market value of the property is in dispute. The Debtor asserts it is worth $100,000.00 and Countrywide values it at $135,000.00. Both parties have had the property appraised. I will consider the valuation issue later.

The property is a wooden structure with four apartments. The Debtor lives in one apartment with her fiance, and rents the others to tenants. The apartments generate $1,800.00 in rental income per month, exclusive of the Debtor's rent (but including her fiance's). The Debtor also has monthly income of $1,504.00 as an employee of Mary Immaculate Nursing Home, Hampstead Hospital. Thus her total monthly income is $3,304.00. Her monthly expenses are estimated at $2,330.00. Therefore, the Debtor has excess monthly income of $974.00 to pay monthly plan payments of $818.00.

The Debtor's plan seeks to bifurcate Countrywide's claim into a secured claim of $100,000.00 and an unsecured claim of $102,792.93. The arrearage and costs are to be paid under her five year plan through monthly installments of $635.00. The unsecured portion of Countrywide's claim is to be paid 14 cents on the dollar, contemporaneous with the arrearage payments. These payments have a five year payout period under the plan.

The note calls for monthly payments for principal and interest of $1,934.68. Regular mortgage payments of $782.07 are to be paid Countrywide under the plan. This amount was arrived at by amortizing the Debtor's valuation of the collateral, $100,000.00, over the note's remaining twenty-two years at an 8% interest rate (prime plus 2%). These payments are to be made directly to Countrywide, who retains its lien on the property.

## I. *BIFURCATION OF THE MORTGAGE*

■ Countrywide first objects to the Debtor's plan on the ground bifurcation of its mortgage is prohibited by section 1322(b)(2). This section provides:

> (b) Subject to subsection (a) and (c) of this section, the plan may . . .
>
> (2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,* or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims. (emphasis added)

Section 1322(b)(2) was recently interpreted by the Supreme Court in *Nobelman v. American Savings Bank,* —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). In that case, the chapter 13 debtors' proposed plan reduced their $71,335.00 mortgage, which was secured only by their residence, to $23,500.00 to reflect the property's fair market value. The remainder of the claim was treated as unsecured. This was done in reliance on section 506(a), under which a creditor's claim is a secured claim only "to the extent of the value of such creditor's interest in the estate's interest in such property." The Court held bifurcation was prohibited by section 1322(b)(2). The Court distinguished between the meaning of "secured claim" under section 506(a) and "rights" of the holder of a secured claim referred to in section 1322(b)(2). The Court ruled that the statute's protection of "rights" included more than the creditor's secured claim. *Id.* at 2110. As the Court saw it, the rights protected included the creditor's contractual rights with respect to interest rates, monthly payments terms and repayment terms. As these rights were protected from modification by section

1322(b)(2), the plan was not confirmable. *Id.* at ——, 113 S.Ct. at 2111.

Countrywide's reliance on *Nobelman* is misplaced. In that case, the creditor's claim was secured *only* by a security interest in the debtors' principal residence. Countrywide, in contrast, has a security interest in the debtor's entire building, which includes both her principal residence and three income-producing units. Countrywide argues that the phrase "secured only by a security interest in real property that is the debtor's principal residence" should be interpreted to refer to a claim which has as its only collateral real estate that includes the debtor's residence. If that were the intention of Congress, the statute should refer to real property that "includes" the residence. Instead, the word "is" appears, which more aptly describes an equivalence between the real estate and the residence. In this case, the real estate is not merely residential, it also contains income-producing units.

I find support in Judge Boroff's recent decision, *In re Legowski,* 167 B.R. 711 (Bankr.D.Mass.1994). There, the chapter 13 debtors proposed to bifurcate their mortgage into secured and unsecured claims. The court held that section 1322(b)(2) did not prohibit the modification. *Id.* at 714. The real estate at issue was a two family house with one unit rented out, providing monthly income. The court focused on the plain language of the statute, which protects claims secured "only" by a security interest in real property that is the debtor's principal residence. The court reasoned that a claim secured by the debtor's residence and property which has "inherently income producing" power does not come within section 1322(b)(2)'s ambit. *Id.* at 714. *See also In re Torres Lopez,* 138 B.R. 348 (D.P.R.1992); *Adebanjo v. Dime Savings Bank, FSB (In re Adebanjo),* 165 B.R. 98 (Bankr.D.Conn.1994); *In re McVay,* 150 B.R. 254 (Bankr.D.Or. 1993); *In re Ramirez,* 62 B.R. 668 (Bankr. S.D.Cal.1986). *See also Zablonski v. Sears Mortgage Corp. (In re Zablonski),* 153 B.R. 604 (Bankr.D.Mass.1993) (bifurcation permitted where structure contained two apartments, one of which was occupied by debtor). *Compare In re Guilbert,* 165 B.R. 88 (Bankr.

D.R.I.1994) (debtor prohibited by § 1322(b)(2) from modifying mortgagee's security interest in three unit dwelling which included debtor's residence, debtor's son's residence and a unit which was rented only occasionally).

Countrywide's claim may therefore be bifurcated notwithstanding section 1322(b)(2).

## II. *LENGTH OF PAYMENTS ON THE SECURED CLAIM*

■ Countrywide poses an alternative argument in the event the court permits bifurcation of its claim. It concedes that under section 1325(a)(5) a plan may provide for payment of a secured claim through payments having a value, as of the effective date of the plan, at least equal to the allowed amount of the secured claim. And it agrees that the value of the payments is to be achieved through use of a market interest rate which might vary from the contract rate. But Countrywide contends that any such payments must be completed over no more than a maximum of five years, not the twenty-two years proposed here. It relies upon section 1322(c), which requires the plan to provide for payments over a period of no more than three years, which the court can extend to a period of no more than five years.

The Debtor, in turn, relies upon section 1322(b)(5), which provides:

(b) Subject to subsections (a) and (c) of this section, the plan may ...

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

■ This provision is of no aid to the Debtor's plan. A change in the amount of the monthly payments hardly constitutes "maintenance of payments." The phrase connotes an absence of change. If the payments are changed, sections 1322(c) and 1325(a)(5) both require that they be completed over the life of the plan, which cannot exceed five years. *See* Lundin, *supra,* § 4.49. *See also Legowski,* 167 B.R. 711, *In re Richards,* 151 B.R. 8 (Bankr.D.Mass.1993).

■ The Debtor may nevertheless take advantage of 1322(b)(5) by keeping the same 10.5% contract rate and making the same payments of principal and interest called for by the note during the life of the plan and during such further period of time as is necessary to have the total principal payments equal the amount of the secured claim as valued by this court. There would then be "maintenance of payments." And those payments would be maintained on the "secured claim" as that claim is computed in accordance with section 506(a). The three to five year limitation on plan payments of section 1322(c) would then have no application because section 1322(b)(5) permits payments lasting longer than five years. It speaks of maintenance of payments on a claim "on which the last payment is due after the date on which the final payment under the plan is due."

It is true that *Nobelman* holds a proposal of payments pursuant to bifurcation constitute modification of the "rights" of the holder of the secured claim within the meaning of section 1322(b)(2). Presumably, if only subsection (b)(2) were applicable, the payments would have to be completed within five years. But subsection (b)(5) provides independent support for such a plan. Subsection (b)(5) does not require the plan proponent to avoid modification of the "rights" of the secured claim holder. Its command is complied with so long as payments are maintained on the "secured claim." The amount of the secured claim is determined by valuation pursuant to section 506(a). This wording avoids the fine distinction made in *Nobelman,* based on the wording of subsection (b)(2), between modification of the "rights" of a secured claim holder and modification of the "secured claim." Subsection (b)(5), moreover, provides that its provisions control "notwithstanding paragraph (2) of this subsection."

## III. *CONCLUSION*

In summary, the Debtor's present plan is nonconfirmable. The Debtor may, however, amend her plan to provide for payments on

Countrywide's secured claim at the 10.5% contract interest rate in the same monthly amounts called for by the note until the total principal payments equal the allowed amount of the secured claim, as hereafter determined by the court. Any such amendment would raise new feasibility issues because of the increase in interest payments from those contained in the present plan.

A separate order has issued denying confirmation and setting down a pretrial on the issues of secured claim valuation and feasibility.