In re Vivian P. and Fannie
M. BROWN, Debtors.

Vivian P. and Fannie M.
BROWN, Plaintiffs,

v.

SHOREWOOD FINANCIAL, INC., GTE Employees Federal Credit Union, Old Republic Equity Credit Service, City of Boston Collection Department, Defendants.

Bankruptcy No. 94–13150–JNF.
Adv. No. 94–1397.

United States Bankruptcy Court,
D. Massachusetts.

Dec. 5, 1994.

Charles P. Normandin and Alyson B. Gal, Ropes & Gray, Boston, MA, for debtors/plaintiffs.

Donald H. Carvin and Brian C. Bryson, Braintree, MA, for Shorewood Financial, Inc., defendant.

## DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT and CREDITOR'S OBJECTION TO CHAPTER 13 PLAN

JOAN N. FEENEY, Bankruptcy Judge.

## I. PROCEDURAL BACKGROUND

The Debtors, Vivian P. and Fannie M. Brown (the "Debtors"), seek confirmation of their Third Amended Chapter 13 Plan (the "Plan") and move for summary judgment in their adversary proceeding against Shorewood Financial, Inc. ("Shorewood" or the "mortgagee"). In their adversary complaint, the Debtors seek, among other things, to bifurcate Shorewood's claim into a secured claim and unsecured claim and avoid Shorewood's mortgage to the extent its claim is undersecured pursuant to 11 U.S.C. § 506(a) and (d).[1] Shorewood has objected to the Plan and has filed a cross-motion for summary judgment in the adversary proceeding,[2]

---

1. Section 506 of the Bankruptcy Code provides in relevant part the following:

   (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim....

   (d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void ...
   11 U.S.C. § 506(a), (d).

2. On October 7, 1994, the parties filed a Joint Motion to Set Deadline for Filing Memoranda of Law in which they asked the Court to consider the Agreed Statement of Facts and memoranda of law to be considered cross motions for summary judgment. The Court allowed the motion on October 18, 1994. The parties filed the

in which it contends that the Debtors' treatment of its claim violates 11 U.S.C. §§ 1322(c)[3] and 1325(a)(5).[4]

The parties have filed an Agreed Statement of Facts, and there are no facts in dispute. The parties also have agreed that the Court shall determine the issues of law identified in the Joint Pretrial Memorandum filed on October 7, 1994.

The Debtors filed their Chapter 13 petition on May 11, 1994. Shorewood timely filed a secured proof of claim in the sum of $111,-267.68. Shorewood's claim is secured by a mortgage on the Debtors' real estate at 15–15A Carmen Street, Dorchester, Massachusetts, which property includes the Debtors' principal residence as well as a separate rental unit. The parties have stipulated that the value of the property is $55,900.00. As of the petition date, the mortgage was in arrears in the sum of $23,994.51.

The Debtors' plan provides for 1) the bifurcation of Shorewood's claim into a secured claim in the sum of $55,900.00 and an unsecured claim for the balance due on the mortgage; 2) payment of the secured portion of Shorewood's claim in accordance with the underlying loan documents ($748.58 per month for 113 months); 3) payment of unsecured claims, including the undersecured portion of Shorewood's claim, as well as the prepetition mortgage arrearage due Shorewood, by payment of a ten percent dividend over the four year term of the plan. The parties also have stipulated that Shorewood's claim may be bifurcated under the provisions of 11 U.S.C. § 506(a).

## II.  ISSUES

The parties have agreed that the following issues of law are to be decided:

I. Whether the bifurcation of a claim secured by property other than the Debtors' principal residence, without any other alteration in the terms of the underlying loan documentation, is itself a modification which triggers the provisions of sections 1322(c) and 1325(a)(5) of the Bankruptcy Code?

II. Whether prepetition mortgage arrearages in respect of a mortgage which is not subject to the protections of section 1322(b)(2) may be included in the unsecured portion of a bifurcated claim or whether the prepetition mortgage arrearage must be cured through the Chapter 13 Plan?

III. Whether the secured portion of a bifurcated claim, if paid in accordance with the terms of the underlying mortgage documentation without modification other than such bifurcation, must be paid over the life of the Chapter 13 Plan?

## III.  ARGUMENTS OF THE PARTIES

### A.  The Debtors

In response to issues one and three, the Debtors argue that they are not required to pay the secured portion of the claim during the term of the Chapter 13 plan by virtue of 11 U.S.C. § 1322(c). Rather, the Debtors submit that section 1322(b)(5) enables them to reinstate the secured portion of Shore-

Agreed Statement of Facts and memoranda on November 10, 1994. By order dated August 8, 1994, the Court had previously consolidated Shorewood's objection to the Debtors' plan with the adversary proceeding.

3. Section 1322(c) of the Bankruptcy Code provides:
(c) The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.
11 U.S.C. § 1322(c).

4. Bankruptcy Code section 1325(a)(5) provides in pertinent part:

(a) Except as provided in subsection (b), the court shall confirm a plan if—
(5) with respect to each allowed secured claim provided for by the plan—
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
(C) the debtor surrenders the property securing such claim to such holder. . . .
11 U.S.C. § 1325(a)(5).

wood's claim in accordance with the terms of the loan documents.[5]

In response to issue two, the Debtors maintain that they are not required to pay the arrearage as a condition to the reinstatement of the secured portion of Shorewood's claim. They argue that the arrearage is not a part of Shorewood's secured claim; instead, they argue that it is part of the deficiency component of the bifurcated claim, and is, therefore, an unsecured claim. They also stress that as a matter of policy, a separate arrearage cure requirement unfairly subordinates general unsecured claims to the mortgagee's arrearage and makes an irrational distinction among similar claims.

### B. Shorewood

The mortgagee argues that sections 1322(c) and 1325(a)(5) dictate that the secured portion of its claim be paid over the life of the plan, in this case, four years. While conceding that modification of the obligation is permissible, the mortgagee submits that the provisions of sections 1325(a)(5) and 1322(c) limit a debtor's power to modify the secured claim to payment over the plan term and no longer. According to the mortgagee, the present plan which pays the secured claim over 113 months is not confirmable.

Additionally, the mortgagee urges this Court 1) to accept the majority view (and confirm its prior ruling with respect to prepetition mortgage arrearages in *In re Richards*, 151 B.R. 8 (Bankr.D.Mass.1993) (specific holding reversed by *Nobelman v. American Sav. Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993)), and 2) to disapprove the Debtors' treatment of the prepetition mortgage arrearage, which allocates them to the unsecured portion of the claim. The mortgagee contends that the payment in full of prepetition arrearages is a condition of bifurcation. Like the Debtors, it also points to policy considerations, arguing that rejection of a cure requirement represents a windfall to debtors who accumulate substantial mortgage arrearages, treating them more favorably than those debtors who pay more of their mortgages.

## IV. DISCUSSION

### A. Treatment of the Secured Claim

In *In re Murphy*, 175 B.R. 134 (Bankr. D.Mass.1994), this Court noted that a debtor's power to modify mortgages under section 1322(b)(2) is severely limited in light of the provisions of section 1325(a)(5). In *Murphy*, the Court declined to restrict a debtor's treatment of long-term, partially secured debt to the term of the plan, relying upon the decision of Chief Judge Queenan in *In re McGregor*, 172 B.R. 718 (Bankr.D.Mass. 1994), and distinguishing the decision in *In re Legowski*, 167 B.R. 711 (Bankr.D.Mass.1994), a case in which the court ruled that if a partially secured claim is modified by the deletion of a demand option, sections 1322(c) and 1325(a)(5) require that the secured portion of the claim must be paid in full over the life of the Chapter 13 plan.[6]

---

5. Bankruptcy Code section 1322(b) provides in pertinent part:

    (b) Subject to subsections (a) and (c) of this section, the plan may—
        (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims....
        (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due....
  11 U.S.C. § 1322(b)(2), (5).

6. The ruling in *Legowski* suggests that Judge Boroff, unlike Judge Queenan, would rule that a claim bifurcated under section 506(a) and provided for under section 1322(b)(5) would be subject to section 1325(a)(5). Such a ruling, while not in any way expressly proscribed or even inconsistent with a statute noted for its inconsistency, would eliminate section 1322(b)(5) as a vehicle for the treatment of long term secured debts other than those secured only by security interests in the debtor's principal residence. This Court does not believe that Congress intended such a result. Indeed, coupled with the decision in *Nobelman*, it would make Chapter 13 a questionable choice for debtors struggling to save their homes, whether their home mortgages could or could not be bifurcated.

■ This instant case is not a situation where the mortgagee's lien is completely undersecured and is to be totally avoided pursuant to section 506(d). Thus, in order to achieve confirmation of a plan treating long-term secured debt that is bifurcated under section 506(a), the Debtors must either pay the allowed amount of the secured claim in full within the plan term, *see In re Legowski,* or cure the mortgage default, maintain regular mortgage payments during the plan term and, thereafter, pay the secured portion of the claim during such further period as is necessary to retire the secured debt. *See In re McGregor.*

■ In the present case, the Debtors have adopted the *McGregor* approach which this Court approved in *Murphy.* As the Debtors' plan proposes to pay the secured portion of Shorewood's claim in full while maintaining regular monthly payments of principal and interest in accordance with the loan documents, it represents a proper treatment of Shorewood's partially secured claim. Accordingly, issues I and III noted above are resolved by this Court's decision in *Murphy,* and Shorewood's objection to confirmation of the Debtors' plan is overruled.

B. Treatment of the Mortgage Arrearage

■ In their Plan, the Debtors seek to allocate the prepetition mortgage arrearages to the unsecured portion of Shorewood's claim. The various applicable provisions of the statute do not provide a straightforward answer to the issue presented. Moreover, the legislative history to Chapter 13 does not shed any light on whether Congress implicitly intended such a requirement in the context of bifurcated claims. It is not clear under section 1322(b)(5) whether the "secured claim on which the last payment is due after the date on which the final payment under the plan is due" is the amount due as of the petition date or the post-bifurcation secured portion of the claim. In other words, which comes first, "cure" or "bifurcation"?

The leading commentator on Chapter 13 expresses the view that after claim splitting under section 506(a) that results in a partially secured debt there are three components of a bifurcated claim: the secured claim up to the value of the collateral, the unsecured claim for the deficiency, and the arrearage claim for unpaid installments. Keith M. Lundin, *Chapter 13 Bankruptcy,* § 4.46, at 4–61–62 (Wiley 1994). All of the courts that have published decisions addressing the issue have concluded that debtors who bifurcate debt into secured and unsecured portions must pay prepetition mortgage arrearages in full to accomplish a curing of a default in the mortgage and to trigger the option of maintaining payments after the plan term under section 1322(b)(5). *See, e.g., Sapos v. Provident Institution of Savings,* 967 F.2d 918 (3d Cir.1992); *In re Cole,* 122 B.R. 943 (Bankr. E.D.Pa.1991).

In *In re Richards,* this Court held that in treating a partially secured long-term debt, a Chapter 13 plan must provide for the curing of defaults by payment of the prepetition mortgage arrearage in order to reinstate the contract and maintain long-term payments on a bifurcated secured debt. 151 B.R. at 18. Chief Judge Queenan adopted this reasoning in *In re Zablonski,* 153 B.R. 604, 605 (Bankr. D.Mass.1993), noting that section 1322(b)(5) controls the debtor's modification powers under section 1322(b)(2) because (b)(5) is made subject to (b)(2).

■ This court reaffirms the holding in *Richards.* Once an undersecured claim is bifurcated into secured and unsecured portions, the debtor, in order to have the option of making payments over the long-term, must cure the arrearages in full during the life of the plan. Like the requirement of curing a default in order to assume an executory contract under section 365, 11 U.S.C. § 365, the arrearage cure is a separate and distinct condition of the debtor's ability to maintain payments under the mortgage.

■ Notwithstanding the requirement of cure as a condition of long-term debt deceleration or reinstatement, the Court's ruling in *Richards* did not resolve the issue of how a debtor's cure payments are to be allocated as a practical matter. This Court in *Richards* opined that the payments should not be allocated to the secured portion of the claim, citing *Sapos,* 967 F.2d at 928 and *Cole,* 122 B.R. at 950. This Court now expands the

ruling in *Richards,* and adopts the position expounded by Judge Lundin in his treatise that

> The allowed amount of the secured portion of the mortgage claim after splitting under § 506(a) remains the maximum amount that the mortgage holder is entitled to recover on account of the payments by the debtor, including the arrearage payments. When the sum of the principal portion of the regular monthly payments and the principal portion of the arrearage payments totals the allowed amount of the secured portion of the claim, the secured claim will be paid in full.

Lundin, *supra,* at ¶ 4.55, 4–103. This comports with section 506(a) and (d) which provides that the lien is valid to the extent of the value of the collateral. Allocation of the arrearage payments to the unsecured portion of the claim obliterates a debtor's ability to maintain long-term debt payments after the plan terms. As a policy consideration, it would also encourage accumulation of prepetition arrearages. Allocation of the principal portion of the arrearage payment to the secured portion of the claim gives the secured party the benefit of its bargain and no more.

## V. CONCLUSION

Based on the above findings, the Court allows in part and denies in part the cross-motions for summary judgment and denies confirmation of the Debtors' Chapter 13 plan. The Debtors may file an amended plan consistent with this decision within ten days of the date of the Memorandum.