In˙ re Ralph Trenton **MURPHY**, Debtor.

Bankruptcy No. 94–13610–JNF.

United States Bankruptcy Court,
D. Massachusetts.

Dec. 5, 1994.

Richard S. Hackel, Boston, MA, for debtor.

David C. Green, Folender, Connors, Wolkowski & Green, Nashua, NH, for First NH Mortg. Corp.

Richard Askenase, Shapiro & Kreisman, Framingham, MA, for Fed. Home Loan Mortg. Corp.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

Several matters are before the Court: two motions for relief from the automatic stay, one filed by Federal Home Loan Mortgage Corporation ("Freddie Mac") and the other by First NH Mortgage Corporation ("First NH"), as well as Freddie Mac's objection to confirmation of the Debtor's Chapter 13 plan. The facts are not in serious dispute, although the Debtor's proposed treatment of the undersecured claims of Freddie Mac and First NH in his plan is.

The Debtor filed a Chapter 13 petition on May 31, 1994. He filed a Chapter 13 plan on July 18, 1994 and an amended Chapter 13 plan on October 31, 1994, along with amended schedules A and J. The Debtor owns two pieces of real estate: a two-family house located at 62 Stockton St., Dorchester, Massachusetts, in which he resides, and a two-family house located next door at 64 Stockton St. The Debtor values both properties at $70,000.00. Freddie Mac has a first mortgage on 62 Stockton St. in the principal amount of approximately $125,000.00 as of September 1, 1994; First NH has a first mortgage on 64 Stockton St. in the original principal amount of $136,500.00.

The Debtor is an auto mechanic. His total monthly income from his employment and the rental of three apartments is $4,143.00. His total monthly expenses come to $3,217.00, a figure that includes $900.00 per month for principal, interest, taxes and insur-

ance on 62 Stockton St. and $925.00 per month for the same items for 64 Stockton St.

The Debtor proposes to bifurcate the claims of both Freddie Mac and First NH as follows:

|  | Freddie Mac | First NH |
| --- | --- | --- |
| secured claim | $70,000.00 | $70,000.00 |
| unsecured claim | $24,729.00 | $63,695.88 |
| pre-petition arrears | $27,978.81 [1] | $-0- |

The Debtor also proposes to reduce the monthly payment to Freddie Mac on its secured claim "to the amount necessary to amortize $70,000.00 over the balance of the term of the original note at the same interest as specified in the note." According to the Debtor, this would require payments of $662.10 per month over the 312 months remaining on the thirty year note with interest remaining at 10.625%. The Debtor also proposes to pay the arrearages on account of prepetition defaults in full without interest through payments to the Trustee. Similarly, the Debtor proposes to pay First NH $674.81 per month over the 312 months remaining on its thirty year note with interest unchanged at 10.875%.

The lenders object to the Debtor's proposed treatment of their claims citing *In re Legowski*, 167 B.R. 711 (Bankr.D.Mass. 1994),[2] and *In re McGregor*, 172 B.R. 718 (Bankr.D.Mass.1994). They maintain that the Debtor has two choices: 1) he may cure the arrearages, thereby reinstating the loan, and then make the regular monthly payments in accordance with the terms of the loan (a procedure that would result in the satisfaction of the reduced principal in less than the 312 months), *see* 11 U.S.C. § 1322(b)(5); or 2) he may modify the terms of the loan in any way that assures that holder of the secured claim retains its lien and the value of the property to be distributed under the plan on account of the $70,000 secured claims is not less than the allowed amount of such claim, *see* 11 U.S.C. § 1325(a)(5), and modified payments are made within three years, unless the Court, for cause permits a longer period which in no event can exceed five years, *see Id.* § 1322(c). *See generally In re Barnes*, 32 F.3d 405 (9th Cir.1994) (where debtors do not propose to cure defaults, § 1325(a)(5) is mandatory); *In re Scott*, 121 B.R. 605, 608 (Bankr.E.D.Okla. 1990) ("[A] debtor may either modify a secured claim in some fashion and treat that secured claim over the term of the Plan or cure any default or arrearage currently due

---

1. According to Freddie Mac's motion for relief from the automatic stay, pre-petition arrearages were $37,466.75 and post-petition arrearages were $6,213.04.

2. In *In re Legowski*, 167 B.R. 711 (Bankr.D.Mass. 1994), the Debtors borrowed $112,233.81 secured by a mortgage and a collateral assignment of rents on a two family dwelling in which they resided. The loan documents provided for repayment over a term of thirty years and contained a provision that the Bank could demand full payment in five years from the date of the note. The Debtors filed a Chapter 13 plan in which they proposed to bifurcate the Bank's claim into a secured claim in the amount of $95,000.00 and an unsecured claim in the amount of $16,067.00. They proposed to make monthly payments of $903.06 in accordance with the 30 year amortization schedule contemplated in the loan documents until such time as the $95,000.00 obligation was satisfied in or about January, 2011.

The Bank objected to the plan, complaining that the amounts set forth for total indebtedness and arrearages were incorrect; that bifurcation was prohibited by *Nobelman v. American Sav. Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), and that the payment over a twenty year term coupled with the deletion of the demand option was an impermissible modification of the secured claim.

The court permitted bifurcation under 11 U.S.C. § 1322(b), holding that "a claim secured by the debtor's residence and property which has 'inherently income producing' power is not protected from modification by § 1322(b)(2)." 167 B.R. at 714. However, the court ruled that the modification of the obligation by the removal of the demand option was jointly proscribed by §§ 1322(c) and 1325(a)(5), stating that "§ 1322(c) and § 1325(a)(5) confine repayment of 'modified' secured claims under § 1322(b)(2) to the life of the plan." *Id.* at 716. The decision left open the precise question of whether bifurcation alone would constitute a modification of the secured claim, as opposed to a modification of the rights of the holder of a secured claim. However, the Court implied that since 1325(a)(5) references allowed secured claims "provided for by the plan" undersecured claims secured by collateral in addition to or other than a debtor's principal residence dealt with under section 1322(b)(5) would not be exempt from section 1325(a)(5)'s mandatory provisions. Such a ruling would severely curtail the utility of section 1322(b)(5) for claims other than those secured only by a debtor's principal residence.

and owing on an obligation over the term of the Plan, simultaneously satisfying the normal payment schedule prescribed under the original note and mortgage.")

▉ This Court has reviewed both the statute and the authority from this and other circuits and is convinced that the flexibility that the Debtor seeks with respect to his Chapter 13 plan simply is unavailable under the present statutory construct. This Court hereby adopts Chief Judge Queenan's analysis in *McGregor*, a case in which the debtor proposed to do essentially what the Debtor is doing in this case, namely bifurcate a mortgagee's claim and amortize the secured portion of the claim over the remaining term of the original mortgage, thereby changing the amount of the original monthly payments. In that case, Chief Judge Queenan reconciled the decision in *Nobelman v. Amer. Savings Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) and §§ 1322(b)(2), (b)(5), (c), and 1325(a)(5) as follows:

> A change in the monthly payments hardly constitutes "maintenance of payments." The phrase connotes an absence of change. If the payments are changed, sections 1322(c) and 1325(a)(5) both require that they be completed over the life of the plan, which cannot exceed five years.
>
> The Debtor may nevertheless take advantage of 1322(b)(5) by keeping the same ... contract rate and making the same payments of principal and interest called for by the note during the life of the plan and during such further period of time as is necessary to have the total principal payments equal the amount of the secured claim as valued by this court. There would then be "maintenance of payments." And those payments would be maintained on the secured claim as that claim is computed in accordance with section 506(a). The three to five year limitation on plan payments of section 1322(c) would then have no application because section 1322(b)(5) permits payments lasting longer than five years....
>
> It is true that *Nobelman* holds a proposal of payment pursuant to bifurcation constitutes modification of the "rights" of the holder of the secured claim within the

meaning of section 1322(b)(2). Presumably, if only subsection (b)(2) were applicable, the payments would have to be completed within five years. But subsection (b)(5) does not require the plan proponent to avoid a modification of the "rights" of the secured claim holder. Its command is complied with so long as payments are maintained on the "secured claim." The amount of the secured claim is determined by valuation pursuant to section 506(a). This wording avoids the fine distinction made in *Nobelman*, based on the wording of subsection (b)(2), between modification of the "rights" of a secured claim holder and the modification of the "secured claim."

*Id.* at 721.

As further explained by Judge Lundin in his treatise, the juxtaposition of sections 1325(a)(5), 1322(c), and 1322(b)(5) results in a significant limitation on a debtor's power to modify a mortgage under section 1322(b)(2):

> Even if the debtor can modify a secured claim, absent consent of the secured claim holder or surrender of the collateral, a Chapter 13 debtor must do one of two things with a real estate secured claim: either pay the present value of the secured claim in full during the life of the plan or cure the default and maintain payments during the life of the plan.... [E]ven after claim splitting, the debtor is stuck having either to pay a large real estate secured claim in full during the plan or to maintain payments consistent with the original loan agreement....

>     \*    \*    \*    \*    \*    \*

> Section 1325(a)(5) fixes an important limitation on a Chapter 13 debtor's power to modify a home mortgage that is not protected from modification by § 1322(b)(2). Section 1325(a)(5) requires that, the debtor pay the present value of the allowed secured claim in full during the life of the plan. As discussed above, the requirement in § 1325(a)(5) that the plan pay the allowed secured claim in full with interest (to compensate for payments over time) renders the power to modify in § 1322(b)(2) often less than useful to

Chapter 13 debtors in dealing with real estate secured loans that are typically too large to be paid in full during the three-to five-year life of the plan. As a result, even in the unusual case in which a Chapter 13 debtor can modify the rights of a home mortgage holder, Chapter 13 debtors are forced to use § 1322(b)(5) to cure defaults and maintain payments during the life of the plan. When the home mortgage is not protected from modification by § 1322(b)(2), the debtor has the advantage of being able to reduce the allowed secured claim to the value of the collateral under § 506(a) and to then use § 1322(b)(5) to cure defaults and maintain payments with respect to the (smaller) allowed secured claim.

Keith M. Lundin, *Chapter 13 Bankruptcy*, § 4.47, at 4–65 and § 4.49, at 4–68 (Wiley 1994) (footnotes omitted).

■ Accordingly, the Court hereby sustains Freddie Mac's objection to the Debtor's Chapter 13 plan. Additionally, the Court hereby allows the motions for relief from stay filed by both lenders, as the Debtor has no equity in the Stockton St. properties and appears to have insufficient income to either amortize the loans according to their existing terms pursuant to 11 U.S.C. § 1322(b)(5) or to provide the lenders with the present value of their of their claims through the remaining term of the plan.

### ORDER

■ In accordance with the Memorandum dated December 5, 1994, the Court hereby sustains the objection of Federal Home Loan Mortgage Corporation to the Debtor's Chapter 13 plan. Additionally, the Court hereby allows the motions for relief from stay filed by Federal Home Loan Mortgage Corporation and First NH Mortgage Corporation. Should the Debtor propose an amended plan that satisfies either 11 U.S.C. § 1322(b)(5) or 11 U.S.C. § 1325(a)(5) and demonstrates that he has sufficient income to make payments under such an amended plan within 10 days of the date of this order, the Court shall reconsider the allowance of the relief from stay motions on an expedited basis without the need for the commencement of adversary proceedings.