**In re Ikechukwo ENEWALLY & Uzoamaka Enewally, Debtors.**

**Ikechukwo Enewally et ux., Plaintiffs,**

**v.**

**Washington Mutual Bank, et al., Defendants.**

**Bankruptcy No. LA 00–35828–SB.**
**Adversary No. LA 00–02742–SB.**

United States Bankruptcy Court, C.D. California.

April 12, 2002.

Stephen M. Taylor, Long Beach, CA, for debtors.

Fred Winters, Wolf Law Firm, Newport Beach, CA, for defendants.

## OPINION ON BIFURCATION OF CREDITOR'S UNDERSECURED CLAIM

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

Debtors have brought this adversary proceeding to bifurcate the value of their income-producing property into secured and unsecured claims. Debtors propose to satisfy the secured claim under their chap-

ter 13 plan[1] by making monthly payments of principal and interest in an amount consistent with the original loan agreement for a reduced period of time until the secured debt is paid in full. At the same time, debtors propose to satisfy the unsecured claim by paying 17% thereof through their chapter 13 plan.

The court holds that debtors may bifurcate the undersecured claim into secured and unsecured claims. The court further holds that debtors may satisfy the secured claim by making the monthly payments of principal and interest provided by the original loan agreement during the life of the chapter 13 plan and during such further time as is necessary to pay in full the secured portion of the claim, plus interest thereon. The unsecured claim will be treated under the five-year chapter 13 plan.

## II. RELEVANT FACTS

Chapter 13 debtors Ikechukwo M. Enewally and Uzoamaka B. Enewally are the owners of three pieces of real property, their residence in Norwalk and two income-producing properties in Long Beach. This litigation involves the Andy Street property in Long Beach, which is not now, and has never been, the debtors' residence. Washington Mutual Bank ("WAMU") holds a first mortgage on the property, for which the unpaid balance is $240,744.33.[2] At the time of filing, payments on the loan were current.

In this adversary proceeding the debtors seek four kinds of relief: (a) to value the property at $210,000 (to which the parties have stipulated); (b) to bifurcate WAMU's claim into secured and unsecured portions pursuant to § 506(a); (c) to require WAMU to credit all post-petition and post-discharge payments to the secured balance of the loan; and (d) to order that the unsecured portion of WAMU's loan will be subject to the discharge expected upon the completion of the debtors' chapter 13 plan.

The debtors' original chapter 13 plan, which was confirmed on November 20, 2000 made no mention of the debtors' intention to bifurcate the lien. The debtors have subsequently amended their plan to state their intention to make this bifurcation, which would give WAMU a secured claim in the amount of $210,000 and an unsecured claim for the remainder, $30,744.33. The plan as amended provides for the payment of 17% of unsecured claims.[3]

## III. POSITIONS OF THE PARTIES

Debtors seek to bifurcate WAMU's claim into secured and unsecured claims in accordance with § 506(a). Debtors propose to pay the secured claim by maintaining the same monthly payments of the principal and interest, consistent with the original loan agreement. Debtors want to continue making those payments during the life of the plan and during such further time as is necessary to pay the secured claim in full. Debtors propose to treat

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (West 2002) and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. The Andy Street property is also encumbered by a second mortgage in the amount of approximately $17,409.62. The debtors' chapter 13 plan treats this debt as unsecured.

3. The percentage to be paid on unsecured claims remains unchanged under the plan as amended because, while the debtors did not disclose their intent to bifurcate WAMU's claim in their original plan, they included the unsecured portion of WAMU's claim in their original total of unsecured claims.

WAMU's unsecured claim through their chapter 13 plan.

WAMU objects to the proposed treatment of its claim and contends that the plan impermissibly modifies its secured claim. WAMU argues that the debtors may only modify their obligation to WAMU if they pay the full amount of the secured claim within the five-year period of the plan.

Debtors have brought a summary judgment motion on this issue. The court finds that there is no triable issue as to any material fact and that this adversary proceeding is ripe for summary judgment.

## IV. DISCUSSION

██ A chapter 7 debtor is required to relinquish all of the debtor's non-exempt property for liquidation and distribution to creditors. In contrast, a chapter 13 debtor is permitted to keep all of the property, provided that (upon objection) the debtor pays all of the debtor's disposable income (after paying living expenses) to the chapter 13 trustee for a period of three to five years for distribution to creditors, and thus pay creditors at least as much as they would receive in a chapter 7 case. Under chapter 13, "individual debtors may obtain adjustment of their indebtedness through a flexible repayment plan approved by a bankruptcy court." *Nobelman v. American Savings Bank*, 508 U.S. 324, 327, 113 S.Ct. 2106, 2109, 124 L.Ed.2d 228 (1993).

### A. Chapter 13 Treatment of Secured Creditors

A chapter 13 plan may treat a secured debt under two statutory alternatives. First, the plan may modify the rights of a holder of a secured claim pursuant to

§ 1322(b)(2). Second, the plan may cure any default and maintain payments on the secured claim pursuant to § 1322(b)(5). *See, e.g., In re Hussain*, 250 B.R. 502, 507 (Bankr.D.N.J.2000); *In re Murphy*, 175 B.R. 134, 137 (Bankr.D.Mass.1994); *In re Scott*, 121 B.R. 605, 608 (Bankr.E.D.Okla. 1990).

Each of these alternatives is subject to important limitations. In addition, the plan must meet the confirmation requirements of § 1325.

### 1. Modification of Secured Creditor Rights

Modification of the rights of a secured creditor is authorized by § 1322(b)(2), which provides that a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence...."[4]

The opportunities available under § 1322(b)(2) are subject to three limitations. First, the payments on the modified debt must be completed during the life of the plan, which is limited to three to five years. Second, the claim cannot be secured solely by real property that is the debtor's principal residence. Third, the plan must meet the confirmation requirements of § 1325.

### a. Three to Five Year Maximum

A chapter 13 plan is limited to a duration of three to five years. Section 1322(d) provides:

The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court

---

**4.** Although not at issue in this case, the statutory exception does not apply to a debtor's principal residence if that residence is a mobile home. This is the impact of the "in real property" phrase in the statutory exception.

may not approve a period that is longer than five years.

Under this provision, a standard chapter 13 plan provides for payments over three years.[5] *See In re Greer,* 60 B.R. 547, 555 (Bankr.C.D.Cal.1986); *see also In re Villanueva,* 274 B.R. 836, 842, (9th Cir. BAP 2002) (holding that it is not bad faith for a debtor to propose a 36–month plan).

### b. Debtor's Principal Residence

■ Congress wrote special protections into chapter 13 for a lender whose collateral is limited to a debtor's principal residence. This exception plays a very important role in many chapter 13 cases, because saving their homes is probably the most important reason that debtors file chapter 13 cases.

The United States Supreme Court interpreted the "principal residence" exception in § 1322(b)(2) in *Nobelman.* In that case the bank had loaned the debtors $68,250 for the purchase of their principal residence. Six years later, the debtors fell behind on their mortgage payments and filed a chapter 13 case. While the bank was then owed $71,335, the parties agreed that the residence was only worth $23,500 at the time of the bankruptcy filing. The debtors proposed to pay the secured portion of the loan by making monthly payments in accordance with the original loan agreement until the $23,500 was paid in full (including interest and arrearages). The plan further proposed to treat the remainder of the bank's claim as unsecured, and to give it the same treatment as other unsecured creditors (who were to be paid nothing).

The Supreme Court held that § 1322(b)(2) prohibits such a modification where the lender's claim is secured only by a lien on the debtor's principal residence. *Nobelman,* 508 U.S. at 332, 113 S.Ct. 2106. The Supreme Court held that the unmodifiable rights of the secured creditor under the statutory exception include the right to repayment of principal in monthly installments over a fixed term at specified rates of interest, the right to retain the lien until paid in full, the right to accelerate the loan upon default and proceed to foreclosure, and the right to bring an action for a deficiency.[6] *See id.* at 329, 113 S.Ct. 2106.

To be sure, the debtors in this case propose to do precisely what the Supreme Court disallowed in *Nobelman* (except that here the debtors propose to pay 17% of the general unsecured claims). However, WAMU's reliance on *Nobelman* is misplaced: *Nobelman* applies only where the collateral is exclusively the debtor's principal residence. In this case, none of the collateral at issue is the debtors' principal residence.[7] Thus, the property is not protected by the antimodification exception in § 1322(b)(2). Where the creditor's claim

---

5. The "best efforts" requirements of § 1325(b) usually assure that the duration of a chapter 13 plan provide that it will be at least three years.

6. Under California law, unlike the Texas law at issue in *Nobelman,* a foreclosing creditor rarely has a right to a deficiency. This arises from several statutory provisions, the most important of which is that a lien creditor that proceeds by non-judicial foreclosure (which is almost universal) waive any right to a deficiency. *See* Cal.Civ.Code §§ 2924–2924/ (West 2001); *see generally* 4 HARRY D. MILLER &

MARVIN B. STARR, MILLER AND STARR CALIFORNIA REAL ESTATE § 10:214 (3d ed.2000).

7. Even where the collateral is partly the debtor's residence, the § 1322(b)(2) exception does not apply. *See, e.g., In re Murphy,* 175 B.R. 134 (Bankr.D.Mass.1994) (two duplexes, one unit of which the debtors occupied); *In re McGregor,* 172 B.R. 718, 720 (Bankr.D.Mass. 1994) (four-unit apartment building, one of which the debtor occupied); *In re Legowski,* 167 B.R. 711, 714 (Bankr.D.Mass.1994) (duplex in which debtors occupied one unit).

is not "secured only by a security interest in real property that is the debtor's principal residence," *Nobelman* does not apply.

## 2. "Cure and Maintain"

■ Further, *Nobelman* does not prevent a chapter 13 debtor from saving a principal residence under § 1322(b)(5). *See Rake v. Wade,* 508 U.S. 464, 467–75, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). Section 1322(b)(5) provides that a chapter 13 plan may:

> notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

Under this statute, a debtor may "cure and maintain" a debt to a secured creditor on the debtor's principal residence. *See Rake,* 508 U.S. at 473 n. 9, 113 S.Ct. 2187; *accord, Nobelman,* 508 U.S. at 330 & n. 4, 113 S.Ct. 2106. Under such a plan, the debtor makes plan payments to cure the deficiency (including interest at a suitable market rate). In addition, the debtor maintains the regular monthly mortgage payments under the original mortgage agreement during the life of the chapter 13 plan and thereafter until the mortgage is paid in full (or the property is sold). *See Rake,* 508 U.S. at 473 n. 9, 113 S.Ct. 2187. The rate of interest on the payments is controlled by the mortgage documents. *See In re Bagne,* 219 B.R. 272, 275 (Bankr. E.D.Cal.1998). The five-year limitation does not apply to a "cure and maintain" plan, because § 1322(b)(5) makes an explicit exception for such plan provisions. *See In re McGregor,* 172 B.R. 718, 721 (Bankr.D.Mass.1994).

■ If a loan is not in default, no cure is needed under this provision. Nonetheless, a debtor may take advantage of this provision to maintain payments on a secured or unsecured claim on which the last payment is due after the final payment under the plan. Citing *Barnes v. Barnes (In re Barnes),* 32 F.3d 405 (9th Cir.1994), WAMU argues that § 1322(b)(5) cannot be invoked by a debtor who has no arrearages to cure. However, *Barnes* held only that a debtor cannot rely on this provision when a debtor's chapter 13 plan *fails* to cure arrearages. *See id.* at 408.

■ WAMU also argues inaccurately that a chapter 13 plan relying on § 1322(b)(5) must leave a secured creditor's rights completely unmodified. The language of this provision lends no support for this argument: the statute requires only that the plan maintain the payments on the secured (or unsecured) claim.

To be sure, a "cure and maintain" plan modifies to a certain extent the rights of the creditor whose loan is secured by the debtor's principal residence. *See id.* However, § 1322(b)(5) authorizes this modification, because this provision applies "notwithstanding paragraph (2) of this subsection." Such a modification thus falls "outside § 1322(b)(2)'s prohibition." *Nobelman,* 508 U.S. at 330, 113 S.Ct. 2106.

## 3. Chapter 13 Plan Confirmation Requirements

■ Section 1325 requires the court to confirm a chapter 13 plan if it meets the requirements stated in that section. Each of these requirements must be satisfied before confirmation. *Barnes,* 32 F.3d at 407.

The provision relevant both to this case and to *Barnes* is § 1325(a)(5), which limits the extent of the permissible modification of a creditor's rights. This provision imposes the following obligation on a chapter 13 plan:

with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is no less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder. . . .

As in *Barnes*, neither (A) nor (C) applies in this case, because WAMU has not accepted the plan and the debtors do not propose to surrender the property. Thus the debtors must satisfy the requirements of subsection (B).

In *Barnes* the debtors proposed to bifurcate the claim of the undersecured creditor into a $43,000 secured claim and a $26,000 unsecured claim. Debtors proposed to amortize the secured claim with a reduced monthly payment over the 19–year remaining life of the original loan at 10% interest. The debtors conceded that they did not satisfy § 1325(a)(5)(B)(ii), and argued that the plan could be confirmed notwithstanding this deficiency. The Ninth Circuit found that compliance with § 1325(a)(5)(B) was mandatory and reversed the plan confirmation order.

As in *Barnes*, the third requirement of subsection (B) does not apply, and the first requirement is clearly satisfied: debtors propose that WAMU retain its lien securing its secured claim.

However, this case is different from *Barnes* with respect to compliance with § 1325(a)(5)(B)(ii). The court finds that the debtors in this case do meet this requirement. Thus *Barnes* does not stand

in the way of confirmation of the amended chapter 13 plan in this case.

For the purposes of § 1325(a)(5)(B)(ii), the allowed amount of a secured claim is governed by § 506(a), which limits it to the value of the collateral. The allowed amount of WAMU's secured claim in this case is $210,000, the stipulated value of the property. In consequence, § 1325(a)(5)(B) requires that the "property to be distributed under the plan on account of [this] claim" must be no less than $210,000 in value.

The property that the amended plan in substance distributes to WAMU is an obligation to make payments, the present value of which is $210,000. This present value is guaranteed by a first mortgage in the real property at issue.

Of course, the debtors are not promising to pay WAMU $210,000 immediately. They propose to pay this amount in monthly payments at the mortgage payment rate under the original agreement. The value of these payments must be discounted to present value to determine the value of the note today. *See Rake v. Wade*, 508 U.S. 464, 472 n. 8, 113 S.Ct. 2187, 2192 n. 8, 124 L.Ed.2d 424 (1993); 2 KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 111.1 (3d ed. 2000). As the Supreme Court explains:

When a claim is paid off pursuant to a stream of future payments, a creditor receives the "present value" of its claim only if the total amount of the deferred payments includes the amount of the underlying claim plus an appropriate amount of interest to compensate the creditor for the decreased value of the claim caused by the delayed payments. This generally involves a determination of an appropriate discount rate and a discounting of the stream of deferred

payments back to the present dollar value of the claim at confirmation.

*Id.*

To compensate for the delay in payment, debtors propose to pay WAMU interest. If the interest rate equals or exceeds the appropriate discount rate, the value of the stream of payments is equal to or exceeds the value of WAMU's secured claim. In this case debtors propose to pay WAMU interest at the contract rate. Absent evidence to the contrary, the court presumes that this rate matches the appropriate discount rate for determining the present value of the obligation. *See GMAC v. Jones,* 999 F.2d 63, 70–71 (3d Cir.1993).[8] Thus the value of the payment obligation equals the value of WAMU's secured claim, and the requirements of § 1325(a)(5)(B)(ii) are met.

### B. Modification of Undersecured Claims

#### 1. Section 506(a)

As a general rule, a bankruptcy debtor can require a lienholder to accept the present value of the property in full satisfaction of a lien, even where the total debt exceeds the value of the property. 2 LUNDIN § 105.1. This rule applies to chapter 13 debtors, unless the loan is secured only by real estate that is the debtor's principal residence.

This rule is based on § 506(a), which provides the basic treatment of an undersecured creditor in a bankruptcy case. Section 506(a) divides an undersecured claim into two claims, a secured claim equal to the value of the collateral and an unsecured claim for the overage. Section 506(a) states in relevant part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditors interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

*See Rake v. Wade,* 508 U.S. 464, 468, 113 S.Ct. 2187, 2190, 124 L.Ed.2d 424 (1993) (applying § 506(a) to an oversecured home mortgage lender in a chapter 13 case); *Nobelman,* 508 U.S. at 327–28, 113 S.Ct. 2106. Thus in this case WAMU has a secured claim for $210,000 (the stipulated value of the real estate) and an unsecured claim for $30,744.33.

Where a claim is secured solely by real property that is the debtor's principal residence, *Nobelman* gives no role to the § 506(a) bifurcation. However, case law provides otherwise where the security is not solely the debtor's principal residence. *See, e.g., Hammond v. Commonwealth Mortgage Corp. (In re Hammond),* 27 F.3d 52 (3d Cir.1994) (permitting bifurcation of undersecured creditor's claim where it was secured by personal property as well as the debtor's personal residence); *In re Pruett,* 178 B.R. 7 (Bankr.N.D.Ala. 1995); *In re Murphy,* 175 B.R. 134, 137 (Bankr.D.Mass.1994); *In re McGregor,* 172 B.R. 718, 721 (Bankr.D.Mass.1994).

#### 2. Modes of Bifurcation

Chapter 13 debtors seeking to modify the rights of an undersecured creditor have generally adopted one of two strategies, both of which rely on § 506(a). Under both strategies debtors have sought to pay the reduced secured claim in full, and

---

**8.** There has been a substantial amount of litigation resulting in many reported decisions on the appropriate discount rate for determining present value under § 1325(a)(5)(B)(ii).

*See* LUNDIN, § 112.1 and cases cited therein. The amount at issue rarely merits litigating this issue in a chapter 13 case. The parties in this case have wisely skirted this swamp.

to pay the unsecured claim only to the same extent as other unsecured creditors are paid under the plan.

The first strategy is to reduce the amount of the monthly payments on the secured claim and to make reduced payments, at the original interest rate, on the secured debt over the life of the original loan (or the duration of the plan, if longer). The second strategy is to reduce the length of the loan, and to maintain the payments at the original amount (with the original interest rate) for a shorter period of time until the secured portion of the loan is paid in full.

### a. Reduced Payments

The first strategy is limited by the five-year maximum for a chapter 13 plan. *Barnes v. Barnes (In re Barnes)*, 32 F.3d 405, 407–08 (9th Cir.1994) The statutory authority for the first strategy is based on § 1322(b)(2) and § 506(a). Thus the five-year maximum provided in § 1322(c) applies, and the secured claim as modified must be paid during the life of the plan (which may not exceed five years).[9]

■ Case law makes it clear that a secured claim may not be modified under § 1322(b)(2) by reducing the size of the monthly payment for the duration of the original loan agreement (if the original duration exceeds the length of the plan). If the chapter 13 debtor proposes to reduce the monthly payments to the secured creditor, the loan must be paid in full over the life of the plan (which may not exceed five years). *See, e.g., Barnes; In re Hussain*, 250 B.R. 502, 507 (Bankr.D.N.J.2000); *In re Pruett*, 178 B.R. 7 (Bankr.N.D.Ala. 1995); *In re Murphy*, 175 B.R. 134, 137

(Bankr.D.Mass.1994); *McGregor*, 172 B.R. at 721; *In re Ramirez*, 62 B.R. 668, 670 (Bankr.S.D.Cal.1986).

In consequence, a chapter 13 debtor may not invoke both a modification of a secured creditor's claim under § 1322(b)(2) and the right to "cure and maintain" over the life of the original loan as authorized under § 1322(b)(5). *See, e.g., Hussain*, 250 B.R. at 507; *Pruett*, 178 B.R. at 9; *McGregor*, 172 B.R. at 721; *Ramirez*, at 670; *In re Scott*, 121 B.R. 605, 608–09 (Bankr.E.D.Okla.1990). This consequence arises because, as discussed *supra*, paragraph (5) states that it applies "notwithstanding paragraph (2) of this subsection." If Congress had said that paragraph (5) of the subsection applied "in addition to" paragraph (2), the law would be otherwise.

Chapter 13 debtors sometimes have the income to pay a mortgage, especially a junior mortgage which may be relatively small, over the life of a plan. However, in most case they do not have sufficient income, and this strategy is not available.

### b. Full Payments for Reduced Time Period

The second typical strategy to deal with an undersecured creditor that is not secured by the debtor's principal residence is to invoke § 1322(b)(5) and § 506(a) to reduce the length of the mortgage, while maintaining the contractual monthly payments (and ordinarily the contractual interest rate) until the secured debt (but not the unsecured portion) is paid in full. As in the first strategy, the unsecured debt is treated with other unsecured debts under the chapter 13 plan and is typically paid in part (and sometimes not at all).

---

9. In fact, in some cases the duration of the chapter 13 plan exceeds the contractual life of the debt. This is particularly true where the debt has a balloon payment, which may come due before the bankruptcy case is filed or during the chapter 13 plan. In these circumstances, the chapter 13 plan may extend the life of the loan to repay it during the life of the chapter 13 plan. *See, e.g., In re Bagne*, 219 B.R. 272, 276–77 (Bankr.E.D.Cal.1998).

This strategy is explained by Chief Judge Queenan in *dicta* in *McGregor*:

> The Debtor may nevertheless take advantage of 1322(b)(5) by keeping the same ... contract rate and making the same payments of principal and interest called for by the note during the life of the plan and during such further period of time as is necessary to have the total principal payments equal the amount of the secured claim as valued by this court. There would then be "maintenance of payments." And those payments would be maintained on the "secured claim" as that claim is computed in accordance with section 506(a). The three to five year limitation on plan payments of section 1322(c) would then have no application because section 1322(b)(5) permits payments lasting longer than five years. It speaks of maintenance of payments on a claim "on which the last payment is due after the date on which the final payment under the plan is due."

*Id.* at 721; *accord, In re Pruett,* 178 B.R. 7, 9 (Bankr.N.D.Ala.1995).

Unlike the first strategy, this strategy is not limited by the 5–year limit on the length of a chapter 13 plan. This strategy relies on § 1322(b)(5), which explicitly permits a "cure and maintain" plan provision to apply to a debt whose final payment comes due after the final payment under the plan.

In this case, the debtors propose to use this second strategy. They propose to continue to make exactly the same monthly mortgage payments to WAMU as are provided in the original agreement (at the original interest rate) until the secured debt is paid in full. The debtors only propose to shorten the term of the loan to reflect the reduction in the secured claim under § 506(a). Because the property at issue is not the debtors' principal residence, this does not violate § 1322(b)(2).

There appears to be no published opinion where the court has approved a debtor's proposal to adopt this strategy. However, in a number of reported opinions where the debtor has proposed the first strategy, the court has rejected the proposal but opined that the debtor could adopt this second strategy instead. *See, e.g., Pruett,* 178 B.R. at 9; *In re Murphy,* 175 B.R. 134, 137 (Bankr.D.Mass.1994) (quoting KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY § 4.49 (1994)); *McGregor,* 172 B.R. at 719–21. However, none of the debtors in those cases had proposed to adopt the second strategy.

The court finds that the debtors are entitled to use § 1322(b)(5) to maintain the monthly payments on their secured claim at the original contractual amount until the secured claim is paid in full. The court further finds that the size of the secured claim is governed by § 506(a), and is limited to the value of the collateral, which in this case is $210,000.[10] When the debtors' payments reach this amount, plus accrued interest at the contractual rate and any other applicable charges, the loan will be paid in full (provided that the debtors complete their chapter 13 plan and obtain a discharge).

**10.** The court finds no apparent statutory reason why this analysis should not also apply to a debt secured by a debtor's principal residence. Section 1322(b)(5) provides that it applies "notwithstanding paragraph (2) of this subsection," which contains the exception for a debtor's principal residence. However, such a construction is not permitted by *Nobelman.* After quoting the relevant language in paragraph (5), the Supreme Court in *Nobelman* stated enigmatically, "These statutory limitations on the lender's rights ... are independent of the debtor's plan or otherwise outside § 1322(b)(2)'s prohibition." *Id.* at 330, 113 S.Ct. 2106.

## V. CONCLUSION

The court concludes that the debtors may confirm a chapter 13 plan that bifurcates their secured debt, which is not secured by their principal residence, under § 506(a) and make the monthly payments of principal and interest at the original contract rate until the reduced secured claim is paid in full.

Pursuant to the first amended plan and this adversary proceeding, the secured debt is reduced to the property's fair market value of $210,000. Debtors are required to make monthly payments to WAMU pursuant to the chapter 13 plan in the same amount as they were obligated to make prepetition under the original loan agreement. This payment obligation will extend for the life of the chapter 13 plan and such further time as is necessary to pay the § 210,000 secured claim in full. When debtors have completed payments on this debt, plus interest at the contract rate the mortgage will be paid in full, on condition that the debtors receive their chapter 13 discharge.

The unsecured claim of $ 30,744.33 is given the same treatment as the other unsecured debts in the chapter 13 plan: the debtors shall pay 17% pursuant to the provisions of the plan, and WAMU's unsecured claim will be discharged with the discharge following the successful completion of the chapter 13 plan.