**In re Khon KHENG and Sakun Kheng, Debtors.**

**Bankruptcy No. 96–10999.**

United States Bankruptcy Court,
D. Rhode Island.

Oct. 17, 1996.

Christopher Lefebvre, Pawtucket, RI, for Debtors.

Erika Miller, Providence, RI, for Allied Group Mortgage Company.

John Boyajian, Chapter 13 Trustee, Providence, RI.

*ORDER CONFIRMING CHAPTER 13 PLAN*

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on August 29, 1996, on the Objection of Allied Group Mortgage Company, a secured creditor, to confirmation of the Debtors' Chapter 13 plan. Allied is owed $96,793, and the debt is secured by a mortgage on the Debtors' real estate. For the purpose of this litigation, it is agreed that the value of the subject property is $75,000, that Allied's secured claim will be stripped down to that amount, and that the Debtors are not seeking to extend payment beyond the original term in the note and mortgage.

What is *not* agreed, and what is at issue here, is whether, after stripdown, Allied's secured claim must be fully paid during the period of the plan, or whether the payments may extend beyond the term of the plan.

In support of its objection to confirmation, Allied cites *In re Legowski,* 167 B.R. 711 (Bankr.D.Mass.1994), wherein the note called for payment over 30 years, but with the additional proviso "that, at any time after five years from the date of the· Note ..., the Bank shall have the right to demand full payment." 167 B.R. at 712. The *Legowski* Chapter 13 plan proposed to delete the bank's right to call the note, and offered payments over twenty years. Denying confirmation, Judge Boroff found that removal of the bank's right to receive full payment after five years was a sufficient modification of the note to require payment of the allowed secured claim within the life of the plan, under 11 U.S.C. §§ 1325(a)(5) [1] and 1322(c) [2].

---

1. This Section states that:
   (a) Except as provided in subsection (b), the court shall confirm a plan if—

   (5) with respect to each allowed secured claim provided for by the plan—
   (A) the holder of such claim has accepted the plan;
   (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
   (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
   (C) the debtor surrenders the property securing such claim to such holder

   11 U.S.C. § 1325(a)(5).

2. While Judge Boroff refers to § 1322(c) in his decision, the Bankruptcy Reform Act of 1994, Pub.L. 103–394, § 301, moved the text of subsection c to § 1322(d). That Section states: "The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court

We agree entirely with Judge Boroff and would have decided *Legowski* as he did. Factually, however, that case is quite different from ours. Judge Boroff was not required to, and therefore did not address the question whether bifurcation, alone, constitutes a modification of the secured claim.

Here, the Debtors are not seeking to modify their secured obligation. The Khengs propose to pay Allied's secured claim under the same term and at the same interest rate as provided for in the note and mortgage. Judge Queenan would have approved a similar scenario in *In re McGregor*, 172 B.R. 718 (Bankr.D.Mass.1994), but denied confirmation because the debtor sought a reduction in the contract interest rate from 10.5% to 8%. In reconciling *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), and Code §§ 1322(b)(2), (b)(5), (d) [3] and 1325(a)(5), Judge Queenan began by referencing § 1322(b)(5), which provides that a plan may "notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and *maintenance of payments* while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5) (emphasis added). Judge Queenan went on to say that:

> A change in the amount of the monthly payments hardly constitutes "maintenance of payments." The phrase connotes an absence of change. If the payments are changed, sections 1322(c) and 1325(a)(5) both require that they be completed over the life of the plan, which cannot exceed five years. . . .
>
> The Debtor may nevertheless take advantage of 1322(b)(5) by keeping the same 10.5% contract rate and making the same payments of principal and interest called for by the note during the life of the plan and during such further period of time as is necessary to have the total principal payments equal the amount of the secured claim as valued by this court. There

may not approve a period that is longer than five years." 11 U.S.C. § 1322(d) (1996).

would then be "maintenance of payments." And those payments would be maintained on the "secured claim" as that claim is computed in accordance with section 506(a). The three to five year limitation on plan payments of section 1322(c) would then have no application because section 1322(b)(5) permits payments lasting longer than five years. It speaks of maintenance of payments on a claim "on which the last payment is due after the date on which the final payment under the plan is due."

It is true that Nobelman holds a proposal of payments pursuant to bifurcation constitute modification of the "rights" of the holder of the secured claim within the meaning of section 1322(b)(2). Presumably, if only subsection (b)(2) were applicable, the payments would have to be completed within five years. But subsection (b)(5) provides independent support for such a plan. Subsection (b)(5) does not require the plan proponent to avoid modification of the "rights" of the secured claim holder. Its command is complied with so long as payments are maintained on the "secured claim." The amount of the secured claim is determined by valuation pursuant to section 506(a). This wording avoids the fine distinction made in Nobelman, based on the wording of subsection (b)(2), between modification of the "rights" of a secured claim holder and modification of the "secured claim." Subsection (b)(5), moreover, provides that its provisions control "notwithstanding paragraph (2) of this subsection."

*Id.* at 721 (citations omitted); *see also In re Murphy*, 175 B.R. 134 (Bankr.D.Mass.1994) (adopting the *McGregor* analysis); *Brown v. Shorewood Fin., Inc. (In re Brown)*, 175 B.R. 129 (Bankr.D.Mass.1994) (overruling secured creditors' objection to confirmation where plan proposed to pay creditor beyond the term of the plan, but in accordance with the terms and conditions of the loan documents). We agree with and adopt the analyses contained in *McGregor, Murphy,* and *Brown.*

**3.** Judge Queenan references § 1322(c) which has since been changed to § 1322(d) under the Bankruptcy Reform Act of 1994, Pub.L. 103–394, Section 301.

Because the Debtors' plan proposes to pay the secured portion of Allied's claim in full, *in accordance with the original provisions of the note and mortgage,* the Objection of Allied Group Mortgage Company is OVER-RULED, and the Plan is confirmed as proposed.

Enter Judgment consistent with this order.