**FEDERAL NATIONAL MORTGAGE ASSOCIATION, Appellant,**

v.

**Edward A. FERREIRA, Appellee.**

**In re Edward FERREIRA and Mary M. Ferreira, Appellees.**

**CIV.A. No. 97–072–T.**

United States District Court, D. Rhode Island.

Aug. 7, 1998.

Daniel D. Gray, Law Office of Mark P. Harmon, Newton Highlands, MA, for plaintiff.

Peter G. Berman, Raskin & Berman, Providence, RI, for defendant.

## MEMORANDUM AND ORDER

TORRES, District Judge.

The Federal National Mortgage Association ("FNMA") has appealed, pursuant to 28 U.S.C. § 158(a), from an order of the Bankruptcy Court approving the Chapter 13 Plan (the "Plan") submitted by Edward and Mary Ferreira (the "Debtors").

The principal issue presented is whether 11 U.S.C. § 1322(b)(2) which permits a plan to bifurcate an under-secured claim into secured and unsecured components and 11 U.S.C. § 1322(b)(5), which permits a plan to provide for paying claims over a period that extends beyond the five-year maximum prescribed by 11 U.S.C. § 1322(d), are mutually exclusive. A secondary issue is whether the Bankruptcy Court erred in approving the Plan on the ground that it does not satisfy the feasibility requirement of 11 U.S.C. § 1325(a)(6) inasmuch as the debtors' excess income is less than their monthly payments under the Plan.

Because I answer both questions in the negative, the Bankruptcy Court's order is affirmed.

### Standard of Review

In reviewing an order of the Bankruptcy Court, the District Court must accept the Bankruptcy Court's findings of fact unless they are clearly erroneous. Fed.R.Bankr.P. 8013. A finding is clearly erroneous even if it is supported by evidence if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (*quoting United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). The Bankruptcy Court's conclusions of law, on the other hand, are subject to *de novo* review. *Palmacci v. Umpierrez*, 121 F.3d 781, 785 (1st Cir.1997).

### Background

In December, 1989, the debtors executed a promissory note for $187,500.00, secured by a mortgage on commercial real estate. The note required monthly payments over a period of thirty years.

On July 3, 1996, the debtors filed a Chapter 13 petition. At that time there was a $14,829.00 arrearage in the payments required by the note. FNMA, as assignee of the note and mortgage, filed a claim for $194,667.75, representing the outstanding principal balance plus the arrearage.

The Bankruptcy Court determined the value of the real estate to be $155,343.00 and the debtors submitted a plan bifurcating FNMA's claim into a secured claim for that amount and an unsecured claim for the balance of $39,324.75 and providing for payment of the secured claim over the remaining term of the 30–year note. The Bankruptcy Court approved that plan and FNMA has appealed.

### Discussion

On appeal, FNMA makes two arguments:

1. That a plan modifying the rights of the holder of a secured claim cannot extend the period for paying the claim beyond the five-year limit set forth in 11 U.S.C. § 1322(d).

2. That the plan is not feasible as required by 11 U.S.C. § 1325(a)(6).

### I. The Five–Year Limitation

Although FNMA's argument is rather difficult to decipher, it appears to rest on the premise that the provisions of § 1322(b)(2) and § 1322(b)(5) are mutually exclusive.

■ Section 1322(b)(2) permits a plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." The modification may include bifurcating an under-secured claim, pursuant to § 506(a),[1] into a secured claim in an amount equal to the value of the security and an unsecured claim for the remainder. *In re Legowski*, 167 B.R. 711, 714 (Bankr.D.Mass.1994).

■ Section 1322(b)(5) permits a plan to cure a default on a debt by requiring the debtor to pay any arrearages during the life of the plan and to continue making payments as they become due even though they may continue to come due after the plan is terminated. That section provides:

[N]otwithstanding paragraph (2) of this subsection, [a plan may] provide for the

---

1. Section 506(a) states that "An allowed claim of a creditor secured by a lien on property … is a secured claim to the extent of the value of such creditor's interest in the estate's interest … and is an unsecured claim to the extent that the value … is less than the amount of such allowed claim." 11 U.S.C. § 506(a).

curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

11 U.S.C. § 1322(b)(5).

■ Generally speaking, the life of a Chapter 13 plan; and, therefore, the period for paying the debtor's obligations, may not extend beyond five years. Thus, 11 U.S.C. § 1322(d) provides:

The plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.

11 U.S.C. § 1322(d).

FNMA concedes that subsection (b)(5) creates an exception to the five-year limitation because it expressly applies to claims on which payments are due after a plan has terminated. However, FNMA asserts that subsection (b)(5) "should be interpreted solely as a means for curing arrearages" and contends that the exception applies only to situations in which the entire amount of the creditor's original claim will be paid and does not extend to cases, like this one, where only the secured portion of a bifurcated claim will be paid, in full. Stated another way, FNMA argues that subsection (b)(5) is inapplicable to the secured portion of a claim that is bifurcated pursuant to subsection (b)(2) because the two subsections cannot be utilized in tandem.

There are several flaws in that argument. First, it is at odds with the plain language of the statute. Subsections (b)(1)–(10) list the provisions that may be included in a plan and connects them with the conjunctive "and" thereby indicating that a plan may include provisions of the kind referred to in any two or more of those subsections, including (b)(2) and (b)(5).

■ Moreover, subsection (b)(5) permits a plan to provide for curing defaults and maintaining payments "on *any* unsecured claim or secured claim." (emphasis added). Section 506(a) defines a claim as "a secured claim to the extent of the value of [a] creditor's interest" in the collateral and "an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of [the entire] claim." Thus, the secured portion of an under-secured claim is a secured claim within the meaning of subsection (b)(5). Accordingly, there is no basis for FNMA's contention that subsection (b)(5) applies only to the entire under-secured claim.

FNMA's reliance on the "notwithstanding" clause contained in subsection (b)(5) is misplaced. That clause, which makes subsection (b)(5) applicable "notwithstanding" the provisions of subsection (b)(2), could be construed in either of two ways. It might be read to expressly sanction curing defaults and requiring the maintenance of payments in connection with a secured claim even though the claim was bifurcated or the creditor's rights, otherwise, were modified pursuant to subsection (b)(2). Construing it in that way, obviously, would be fatal to FNMA's argument.

Alternatively, the "notwithstanding" clause could be interpreted merely as authorizing cure and maintenance with respect to claims secured by an interest in the debtor's principal residence despite the fact that subsection (b)(2), otherwise, would prohibit modification of such claims. That construction appears to be more consistent with Congress' intent and the history of the statute. *See In re Taddeo,* 685 F.2d 24, 27 (2nd Cir.1982) ("The 'notwithstanding' clause was added to § 1322(b)(5) to emphasize that defaults in mortgages could be cured notwithstanding § 1322(b)(2)."). However, it does not support FNMA's contention that subsection (b)(5) has no application to claims that have been bifurcated pursuant to subsection (b)(2).

The "notwithstanding" clause must be read in the context of subsection (b)(5), as a whole. As already noted, that subsection, on its face, applies to "*any* unsecured claim or secured claim." (emphasis added). The notwithstanding clause does not limit the scope of subsection (b)(5) by excluding claims referred to in subsection (b)(2) other than claims secured by the debtor's principal residence. On the contrary, the clause makes it clear that subsection (b)(5)'s reach extends to claims secured by the debtor's principal residence

even though such claims are not subject to modification under subsection (b)(2). If Congress had intended to make subsection (b)(5) inapplicable to all other claims that are modified pursuant to subsection (b)(2), it easily could have said that.

In addition, as a practical matter, FNMA's interpretation of the statute would prevent under-secured debtors from obtaining relief under either subsection (b)(2) or (b)(5). Subsection (b)(2), alone, rarely would be utilized because the secured portion of the claim would have to be paid in full during the life of the plan. Subsection (b)(5), by itself, would be equally unenticing because the unsecured portion of the claim, unlike other unsecured claims, would be non-dischargeable and would have to be paid in full.

Finally, the interpretation urged by FNMA flies in the face of the decisions rendered by virtually every bankruptcy court in the First Circuit that has addressed the question. Those courts universally have held that, although bifurcation may modify a creditor's "rights" within the meaning of subsection (b)(2), it does not preclude application of subsection (b)(5) when payments are "maintained" in accordance with the terms of the original indebtedness. *See, e.g., In re Kheng,* 202 B.R. 538, 539 (Bankr.D.R.I.1996); *Brown v. Shorewood Fin., Inc., GTE,* 175 B.R. 129, 133 (Bankr.D.Mass.1994); *In re Murphy,* 175 B.R. 134, 137 (Bankr.D.Mass.1994); *In re McGregor,* 172 B.R. 718, 721 (Bankr.D.Mass. 1994).

FNMA's reliance on *Nobelman v. American Sav. Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), is misplaced. *Nobelman* merely holds that bifurcation constitutes a modification of a creditor's "rights" within the meaning of subsection (b)(2). It says nothing about the applicability of subsection (b)(5) to the secured portion of such bifurcated claims. As Judge Votolato explained in *Kheng:*

> It is true that *Nobelman* holds a proposal of payments pursuant to bifurcation constitute [sic] modification of the "rights" of the holder of the secured claim within the meaning of section 1322(b)(2). Presum-

ably, if only subsection (b)(2) were applicable, the payments would have to be completed within five years. But subsection (b)(5) provides independent support for such a plan. Subsection (b)(5) does not require the plan proponent to avoid modification of the "rights" of the secured claim holder. Its command is complied with so long as payments are maintained on the "secured claim." The amount of the secured claim is determined by valuation pursuant to section 506(a). This wording avoids the fine distinction made in *Nobelman,* based on the wording of subsection (b)(2), between modification of the "rights" of a secured claim holder and modification of the "secured claim." Subsection (b)(5), moreover, provides that its provisions control "notwithstanding paragraph (2) of this subsection."

*Kheng,* 202 B.R. at 539 (*quoting McGregor,* 172 B.R. at 721).

■ In short, subsections (b)(2) and (b)(5) are not mutually exclusive and a Chapter 13 plan may include a provision for curing default and maintaining payments with respect to the secured portion of an under-secured claim that has been bifurcated pursuant to subsection (b)(2) and § 506(a).

## II. *Feasibility of the Plan*

One of the requirements for confirmation of a Chapter 13 plan is that "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6) In this case, FNMA argues that the Plan is not feasible because it provides for monthly payments that exceed the debtors' monthly excess income by $17.00.[2]

■ Ordinarily, feasibility is a question of fact; and, therefore, the Bankruptcy Court's determination should not be disturbed unless clearly erroneous. *Peerless Ins. Co. v. Rivera,* 208 B.R. 313, 315 (D.R.I. 1997). Some courts have stressed the desirability of providing a "cushion" that will enable a debtor to meet unexpected expenses. *See, e.g., In re Perskin,* 9 B.R. 626, 633 (Bankr.N.D.Tex.1981). However, that is not

---

**2.** The Plan calls for monthly payments of $500.00. At the time of filing, the debtors' monthly income exceeded their monthly expenses by only $483.00.

an absolute requirement. The test is whether the expectations of income reflected in the Plan are "sufficiently realistic that [the debtors] should be given an opportunity to carry out the plan they propose." *In re Compton*, 88 B.R. 166, 167 (Bankr.S.D.Ohio 1988). Thus, a plan that provides a generous cushion between current income and expenses may not be feasible if the debtor's ability to continue generating income at that level is questionable. Conversely, a plan showing a small deficit between current income and expenses may be feasible if there is a reasonable likelihood that the debtor's income will increase or that his expenses will diminish.

In this case, the debtors' income derives from a barber shop that they operate and from renting the apartment units that comprise the mortgaged premises. That income fluctuates based on the volume of business at the barber shop and the number of vacancies in the rental units. Under these circumstances, it cannot be said that the bankruptcy judge's determination was clearly erroneous.

### Conclusion

For all of the foregoing reasons, the Bankruptcy Court's order confirming the plan is hereby affirmed.

IT IS SO ORDERED.