**In the Matter of Joseph J. and Christine
A. LIPPOLIS, Debtors.**

Civ.A. No. 98–4911.

United States District Court,
E.D. Pennsylvania.

Dec. 28, 1998.

Lawrence B. Schwartz, Lansdowne, PA, for Debtors.

William J. Levant, Lesser & Kaplin, P.C., Blue Bell, PA, for Equity One, Inc.

Joseph Minni, Office of U.S. Trustee, Philadelphia, PA, for U.S.Trustee.

Edward Sparkman, Philadelphia, PA, for Standing Chapter 13 Trustee.

Marie E. Truitt, Levittown, PA, Interested Party pro se.

### MEMORANDUM

KELLY, District Judge.

Presently before the Court is an appeal from two Orders of the United States Bankruptcy Court for the Eastern District of Pennsylvania. The first Order, dated January 7, 1998, denied Appellant, Equity One Incorporated's Motion for Relief from the Automatic Stay, or in the alternative, to Dismiss the Chapter 13 case filed by Joseph J. Lippolis and his wife, Christine A. Lippolis ("Debtors"). The second Order, dated August 18, 1998, overruled the objections of Appellant and confirmed the Debtors' First Amended Chapter 13 Plan. For the reasons that follow, the Order of the Bankruptcy Court dated January 7, 1998, will be reversed and remanded with directions to dismiss the Chapter 13 case for "cause" pursuant to 11 U.S.C. § 1307(c) and the Order dated August 18, 1998, will be vacated.

### I. FACTS.

On July 28, 1995, Marie E. Truitt ("Truitt"), Debtor Joseph Lippolis' mother, borrowed $118,800.00 from Appellant which she used to purchase certain real property

located at 63 Roving Road, Levittown, Middletown Township, Pennsylvania ("the property"). Truitt gave Appellant a mortgage on the property in return. Truitt lived on the property with Debtors and their extended family, until shortly after its purchase, when Truitt moved to New Jersey. At the time of purchase, it was orally agreed between Debtors and Truitt that Debtors would make most or all of the mortgage payments to Appellant. Despite this agreement, on January 28, 1996, payments fell into default and foreclosure proceedings were begun on October 2, 1996.

Truitt filed a Chapter 13 bankruptcy petition on October 15, 1996 in the Bankruptcy Court for the District of New Jersey. After confirmation, Truitt continued defaulting on her mortgage payments, and on May 22, 1997, Appellant was granted relief from the Automatic Stay. Appellant then continued its state court foreclosure proceeding and a Sheriff's Sale was scheduled for November 14, 1997.

On November 12, 1997, Truitt voluntarily dismissed her bankruptcy case and sold the premises to Debtors for one dollar consideration. The following day, Debtors filed the instant Chapter 13 bankruptcy petition and the scheduled Sheriff's Sale was postponed until December 12, 1997. Appellant's immediately filed a Motion for Relief from the Automatic Stay, pursuant to 11 U.S.C. § 362(d), contending that Debtor's abuse of the bankruptcy process was sufficient "cause" to either lift the automatic stay or dismiss the case entirely. Alternatively, Appellant sought relief from the automatic stay contending that Debtors lacked equity in the property and reorganization was not feasible absent a retransfer to Truitt since the transfer to Debtors constituted a default on the mortgage that Debtor's themselves could not cure.

A hearing prior to the scheduled Sheriff's Sale was requested. On December 11, 1997, a hearing was held and it was established that, as of November 14, 1997, a payoff balance of $147,994.38 remained on Appellant's loan. (N.T. 12/11/97 at 10.) The loan was delinquent 21 payments, a total of $23,288.58. (*Id.*) Since the loan originated, Appellant had received 12 of 28 expected payments, however, only seven payments were honored, while five checks were returned for insufficient funds. (*Id.* at 11.) Christine Lippolis testified that the sole purpose of the transfer from Truitt, was to prevent the property from being sold at the scheduled Sheriff's Sale. (*Id.* at 41.)

At the conclusion of the December 11, 1997 hearing, the Bankruptcy Court postponed the scheduled Sheriff's Sale to January 8, 1998 to allow the parties to file written briefs on the issues. On January 7, 1998, Appellant's Motion for Relief from the Automatic Stay, or in the alternative, to Dismiss the Chapter 13 case was denied, conditioned on Debtors' continuing to make timely payments to Appellants. In making this decision, the Bankruptcy Court found that Debtors were entitled to cure Truitt's mortgage default under federal and state law. *In re Lippolis,* 216 B.R. 378, 384 (Bankr.E.D.Pa.1997) (citing 11 U.S.C. § 1322; 41 Pa.C.S.A. § 404; 21 Pa.C.S.A. §§ 733, 734).

On December 1, 1997, Debtors filed their schedules and a proposed Chapter 13 Plan. The proposed Plan sought to continue monthly mortgage payments directly to Appellant and cure arrears by submitting graduating monthly payments, beginning at $500.00 and increasing to $700 dollars after five years, to the Trustee. Appellant filed objections to the proposed Plan contending that (1) it failed to comply with 11 U.S.C. § 1325(a)(5)(B) because it did not propose payment of Appellant's entire claim over the five year life of the plan and (2) it failed to comply with 11 U.S.C. § 1325(a)(6) because the Debtors would not be able to make all payments contemplated by their plan. A confirmation hearing was held on August 4, 1998 and Appellants objections were overruled by Order dated August 8, 1998. This appeal followed.

## II. STANDARD.

■ This court has jurisdiction over "appeals from final judgments, orders and decrees" of the bankruptcy court. 28 U.S.C. § 158(a). The bankruptcy court's conclusions of law are subject to "de novo" review by this court. Findings of fact, however, are

reviewed under a "clearly erroneous" standard. FED.R.BANKR.P. 8013.

## III. DISCUSSION.

A. *Appellant's Motion for Relief from Automatic Stay or in the alternative, to Dismiss.*

Appellant sought relief from the automatic stay on two grounds. First, Appellant argued that pursuant to section 362(d)(1) Debtors' abuse of the bankruptcy process was sufficient "cause" for relief from the automatic stay. Second, Appellant argued relief was appropriate pursuant to section 362(d)(2) because Debtors lacked equity in the property and the property was not necessary to reorganization. Alternatively, Appellant sought dismissal for "cause" pursuant to section 1307(c).

In support of its arguments for relief from the automatic stay pursuant to section 362(d)(1), or dismissal, pursuant to § 1307(c), Appellant contended that the transfer from Truitt to Debtors solely to prevent the scheduled Sheriff's Sale was sufficient evidence of "bad faith" to justify lifting the automatic stay or dismissing the case entirely. In support of its argument for relief pursuant to section 362(d)(2), lack of equity was not disputed. Further, Appellant contended that the property was not necessary to reorganization because Debtors' retention of the property would cause any attempt at reorganization to fail. In support of this argument Appellant referenced paragraphs 17 and 18 of the Truitt mortgage which provide:

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) *cures any default of any other covenants or agreements;* (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstatement shall not apply in the case of acceleration under paragraph 17.

*Lippolis,* 216 B.R. at 383 (emphasis added). Appellant argued that two mortgage defaults had occurred, one when payments became delinquent, and a second when the property was transferred from Truitt to Debtors. Appellant contended that reorganization was impossible because Debtors could not cure the second default absent a re-transfer to Truitt.

The Bankruptcy Court denied Appellant's Motion finding that Debtors had the right, under both federal and state law, to cure the Truitt mortgage defaults. The Bankruptcy Court found under federal law that section 1322(c)(1), incorporating section 1322(b)(3), gave Debtors the right to cure the mortgage default. 11 U.S.C. § 1322. Further, the Bankruptcy Court found that Debtors were "terre-tenants" who, under the law of Pennsylvania, were entitled to cure Truitt's mortgage default. *In re Lippolis,* 216 B.R. 378, 384 (Bkrtcy.E.D.Pa.1997) (citing *Marra v. Stocker,* 532 Pa. 187, 615 A.2d 326 (Pa.1992) (defining "terre tenant" as "one who purchases and takes land subject to the existing lien of a mortgage or judgment against a former owner") (citing 41 Pa.C.S.A. § 404)); 21 Pa.C.S.A. §§ 733, 734.

On appeal, Appellant contends that this conclusion of law is erroneous because even if *Marra* applies, Debtors cannot cure the mortgage default absent a transfer back to Truitt, and because Pennsylvania law does not allow "terre-tenants" to assume a mortgage obligation. Each argument is discussed below.

■ Appellant concedes that Chapter 13 generally allows for the cure of a pre-petition mortgage default on a claim secured by the debtor's principal residence. 11 U.S.C. § 1322. Appellant argues that under the facts of this case, however, Debtors are unable to cure the mortgage default.

■ "Cure" is not defined in the Bankruptcy Code. "Curing a default" under the Bankruptcy Code "means taking care of the triggering event and returning to pre-default conditions." *In re Liberty Warehouse Assocs. Partnership,* 220 B.R. 546, 548 (Bankr. S.D.N.Y.1998) citing *DiPierro v. Taddeo,* 685 F.2d 24, 26–27 (2d Cir.1982). When a default is cured, its consequences are nullified. *Id.* Appellant correctly argues that "cure" in this case would require a re-transfer of the property to Truitt. Were Debtors to re-transfer the property to Truitt, they would then be unable to cure the default as Debtors out of title. *In re Walker,* 171 B.R. 197, 209 (Bankr.E.D.Pa.1994). Thus, "cure" in this case is impossible.

In *Marra,* the Pennsylvania Supreme Court construed the Loan Interest and Protection Law ("Act 6") to require a "residential mortgage lender" to give "actual," and not merely "technical," notice of its intent to foreclose and of the right to cure the default, to a successor record property owner who gives the lender notice of their ownership interest in the property. *Marra,* 615 A.2d at 329. The important aspect of this holding was the requirement of "actual," rather than "technical," notice for all mortgage defaults whether monetary or of any other nature. *Id.*

The *Marra* holding is based on the Act 6's definition of "residential mortgage debtor," which provides, "a non-corporate borrower who is obligated to a residential mortgage lender to repay in whole or in part a residential mortgage *and a successor record owner of the property, if any, who give notice thereof to the residential mortgage lender.*" 41 Pa.C.S.A. § 101 (emphasis added); *Marra,* 615 A.2d at 328 (emphasis in original). Act 6 defines "residential mortgage" as "an obligation to pay a sum of money in an original *bona fide* principal amount of fifty thousand dollars ($50,000) or less ..." 41 Pa.C.S.A. § 101.

Appellants mortgage obligated Truitt to pay a principal amount of $118,800.00. This amount is far in excess of $50,000.00, thus, the mortgage is not a "residential mortgage," neither Truitt nor Debtors are "residential mortgage debtors," and Appellant is not a "residential mortgage lender." 41 Pa.C.S.A. § 101. Act 6 and the *Marra* decision are inapplicable to this case; the Bankruptcy Court erred in finding otherwise.

■ An alternative basis for the Bankruptcy Court's denial of Appellant's Motion was sections 733 and 734 of Title 21 of the Pennsylvania Statutes. Those sections provide:

§ 733. Assignment on tender of money due

It shall be lawful for any person or persons, natural or artificial, holding lands encumbered by a mortgage, judgment, recognizance, or other security, after the same shall become due and payable, his or

their agent, attorney, or terre tenant, to tender to the owner or owners of such mortgage, judgment, recognizance, or other security, the full sum of money due thereon, including interest and any other charges due, and, upon such tender, to require the owner or owners to assign and transfer to such person or persons as the owner of the encumbered property may name, such mortgage, judgment, recognizance, or other security. Such assignment shall create no personal liability on the part of the assignor, by way of implied warranty, or otherwise, and any such assignment shall be without recourse.

§ 734. Failure or refusal to assign; court to enforce

In case the holder of any such mortgage, judgment, recognizance, or other security, shall fail or refuse, on such tender being made, to execute and assignment or transfer as required, it shall be the duty of the court of common pleas of the county in which said mortgage, judgment, or recognizance or other security shall cease from the day of such tender until the assignment shall be executed and delivered. The court shall also make such further decree as to costs as justice and equity may require. No such decree shall be entered unless it shall appear to the court that all parties holding any interest in the lands so encumbered have joined in the application for the assignment of such mortgage, judgment, recognizance, or security.

21 Pa.C.S.A. §§ 733, 734. The Bankruptcy Court found that Debtors were terre tenants, and that these statutes "provide terre tenants with a right to pay off the mortgage on their property, and obligates Equity to recognize the assignment at issue." *In re Lippolis*, 216 B.R. at 384. When combined with the unwaivable right to cure defaults found in Act 6, the Bankruptcy Court concluded that Debtors had an absolute right to cure the mortgage default without a transfer back to Truitt, rendering the conflicting provisions of paragraphs 17 and 18 of the mortgage unenforceable. This conclusion is erroneous.

I have already determined that Debtors are incapable of curing the mortgage default

while retaining the property. *See supra* Part III.A. I have also held that Act 6 is inapplicable to this case. *See supra* Part III.A. I further find that sections 733 and 734 of Title 21 do not allow terre tenants, such as Debtors, to assume the mortgage payments of another. Rather, those sections allow a terre tenant to pay off a note in full, and then assume ownership of the mortgaged property by requiring the owner of the mortgage securing the note, to transfer or assign the mortgage to them. Debtors have not paid off Appellant's note in full, therefore, they cannot require Appellant to assign the mortgage to them. Sections 733 and 734 do not apply to this situation.

As soon as Debtors filed their Chapter 13 petition, Appellant sought relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code, which provides in relevant part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property and

(B) such property is not necessary for an effective reorganization.

11 U.S.C. § 362(d)(1)–(2). Alternatively, Appellant sought dismissal pursuant to section 1307(c) which allows a case to be dismissed "for cause." Each argument is discussed below.

1. 362(d)(1).

■ The Bankruptcy Code provides no definition of what constitutes "cause" for relief, thus, the bankruptcy court is left to make this determination on a case-by-case basis. *In re Ingebrethsen*, Nos. 97–7115, 93–20861, 1998 WL 351730, at *3 (E.D.Pa. June 24, 1998) (citing *Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir.1994)). "Ultimately, the

decision to grant relief from the stay is in the sound discretion of the bankruptcy court." *In re Olick,* 221 B.R. 146, 160 (Bankr.E.D.Pa. 1998) citing *In re Colonial Center Inc.,* 156 B.R. 452, 459 (Bankr.E.D.Pa.1993). This Court may reverse the bankruptcy court's determination of whether to lift the automatic stay only for an abuse of discretion. *Thomas v. Universal Am. Mortgage,* Nos. 97–3995, 97–4001, 97–4123, 97–5408, 1998 WL 57523, at *3 (E.D.Pa. Feb. 6, 1998) (citing *In re Sonnax Indus., Inc.,* 907 F.2d 1280, 1288 (2d Cir.1990))

■■ Filing a bankruptcy petition in "bad faith" is sufficient cause for relief from the automatic stay pursuant to section 362(d)(1). *In re Nelson,* 66 B.R. 231, 236–37 (granting relief from stay under 362(d)(1) for "cause" due to "abuse and misuse of bankruptcy jurisdiction"), *aff'd,* 838 F.2d 1207 (3d Cir.1988); *In re Duvar Apt., Inc.,* 205 B.R. 196, 200 (9th Cir. BAP 1996); *Matter of Trident Assoc. Ltd. Partnership,* 52 F.3d 127, 131 (6th Cir.1995), *cert. denied,* 516 U.S. 869, 116 S.Ct. 188, 133 L.Ed.2d 125 (1995); *In re Conference of African Union First Colored Methodist Protestant Church,* 184 B.R. 207, 218 (Bankr.D.Del.1995) (citing *In re Dixie Broadcasting, Inc.,* 871 F.2d 1023, 1027 (11th Cir.1989), *cert. denied,* 493 U.S. 853, 110 S.Ct. 154, 107 L.Ed.2d 112 (1989)). *But cf., Taylor v. Federal National Mortgage Assoc.,* 96 B.R. 584, 591 (Bankr.E.D.Pa.1989) (expressing disbelief that there is any "good faith" requirement as a condition of the filing of a Chapter 13 case). Although the weight of authority is in favor of lifting the automatic stay for "cause" consisting of "bad faith" in filing a Chapter 13 petition, the Bankruptcy Court for the Eastern District of Pennsylvania has steadfastly refused to accept that there is any "good faith" requirement as a condition of filing a Chapter 13 case. *E.g., Taylor,* 96 B.R. at 591. I hold that a "good faith" requirement is inherent in any court proceeding, bankruptcy or otherwise, and therefore, relief from the automatic stay is appropriate when a bankruptcy petition is filed in "bad faith."

"Debtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings."

*Taylor v. Freeland & Kronz,* 503 U.S. 638, 644, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (citing 11 U.S.C. § 727(a)(4)(B) (authorizing denial of discharge for presenting fraudulent claims); Fed.R.Bankr.Pro. 1008 (requiring filings to "be verified or contain an unsworn declaration" of truthfulness under penalty of perjury); Fed.R.Bankr.Pro. 9011 (authorizing sanctions for signing certain documents not "well grounded in fact and . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law"); 18 U.S.C. § 152 (imposing criminal penalties for fraud in bankruptcy cases)). To allow a Debtor to file a petition in bad faith and still enjoy Chapter 13's automatic stay would encourage illicit filings and run counter to the above-quoted provisions of the Code which were designed to deter improper conduct. For these reasons, I hold that relief from the automatic stay may be granted if it is determined that a petition was filed in "bad faith."

■ In this case Christine Lippolis testified unequivocally that the sole purpose of the transfer from Truitt and subsequent bankruptcy filing was to protect the property from foreclosure. N.T. 12/11/97 at 41. Several courts have held that "a petition in bankruptcy is filed in bad faith when the relief sought by the filing is exclusively the operation of an automatic stay in order to prevent a foreclosure." *Nelson,* 66 B.R. at 235 (citing *Matter of 299 Jack–Hemp Assocs.,* 20 B.R. 412 (Bankr.S.D.N.Y.1982)); *In re Rye,* 54 B.R. 180, 182 (Bankr.D.S.C.1985) (citing *California Mortgage Service v. Yukon Enters., Inc.,* 39 B.R. 919, 921 (Bankr. C.D.Cal.1984); *Meadowbrook Investors Group v. Thirtieth Place, Inc.,* 30 B.R. 503 (9th Cir. BAP 1983)); *In re Zed, Inc.,* 20 B.R. 462 (Bankr.N.D.Cal.1982); *In re Alison Corp.,* 9 B.R. 827 (Bankr.S.D.Cal.1981).

It is undisputed that the sole reason for Debtors bankruptcy was to invoke the automatic stay and prevent the scheduled Sheriff's Sale. This is an abuse of the bankruptcy process which will not be tolerated. Appellant's Motion for Relief from the Automatic Stay should have been granted on this basis alone. It was an abuse of discretion for the

Bankruptcy Court to find otherwise, therefore, I reverse.

### 2. 362(d)(2).

To obtain relief from the automatic stay pursuant to section 362(d)(2), Appellant must show that Debtors have no equity in the property and that the property is not necessary for the effective reorganization of the debtor. 11 U.S.C. § 362(d)(2). Appellant carried its burden of showing that Debtors have no equity in the property when Christine Lippolis testified that the property was worth no more than $ 132,000.00 and a representative of Appellant testified that a payoff balance of $147,994.38 remained on the loan. 11 U.S.C. § 362(g)(1); *In re Indian Palms Assocs. Ltd.*, 61 F.3d 197, 207 (3d Cir.1995) (defining equity as "the value of a property above all secured liens"). Indeed, Debtors concede "the outstanding loan balance exceeds the current fair market value of the collateral." Bankr.Rec.Ex. 12 at unnumbered page 2.

Having established lack of equity, the burden then shifted to Debtors to prove that the property was necessary for an effective reorganization. 11 U.S.C. § 362(g)(2). To meet this burden, Debtors argued that the property was necessary for reorganization as the sole residence of Debtors and their five minor children who were enrolled in the local school district. In support of this argument, Debtors cite *In re Crompton* for the proposition that a "debtor's desire to retain a particular, unique home may be a great source of personal satisfaction and a foreclosure may preclude future home ownership, which are significant human values regarding which we submit that a bankruptcy court should be loath to. second guess a debtor." 73 B.R. 800, 811 (Bankr.E.D.Pa.1987).

While *Crompton* supports Debtors' contention, later cases from this district have held that a better approach is "close examination of debtor's motive testimony" to get to "the heart of the term necessary." *In re Kehm*, 90 B.R. 117, 122 (Bankr.E.D.Pa.1988). Normally, this entails the presentation of evidence that retention of the home is necessary for reorganization because no comparable housing is available or because the home

is necessary to the debtor's business. *Id.* (citing *In re Roselli*, 10 B.R. 665, 667 (Bankr. E.D.Pa.1981) (lifting stay for failure to present such evidence)). At the December 11, 1997 hearing, Debtors failed to present any evidence which showed the property was necessary for reorganization. Were dismissal not appropriate on other grounds, I would remand this matter to allow the Bankruptcy Court to make further factual findings regarding the Debtors' motives and the availability of comparable housing, however, this is unnecessary due to the outcome of other issues presented herein.

### 3. 1307(c).

Appellants alternative Motion to Dismiss is based on section 1307(c) which allows a case to be dismissed "for cause." 11 U.S.C. § 1307(c). The Third Circuit Court of Appeals has explicitly held that lack of good faith in filing a bankruptcy petition is sufficient cause for dismissal. *In re Lilley*, 91 F.3d ·491, 493 (3d Cir.1996). As discussed above, Debtors acted in bad faith by filing for bankruptcy solely to invoke the automatic stay and prevent foreclosure. *See supra* Part III.A.1. Sufficient cause for dismissal pursuant to section 1307(c) exists, therefore I reverse that portion of the Bankruptcy Court's Order dated January 8, 1997.

### B. *Appellant's Objections to Debtors' Chapter 13 Plan.*

Appellant objected to Debtors' Plan contending (1) that it failed to comply with section 1325(a)(5)(B) because it did not propose payment of Appellant's entire claim over its five-year anticipated life and (2) that the Debtors would not be able to make all payments contemplated by it as required by section 1325(a)(6). 11 U.S.C. § 1325(a)(5)(B), 1325(a)(6). The Bankruptcy Court overruled both objections finding section 1325(a)(5)(B) inapplicable because Debtors' proposed a "cure plan" not a "payoff plan" and finding that Debtors' plan was feasible under section 1325(a)(6) because Debtors' had taken significant steps to increase their income. Both of Appellant's objections are discussed below.

### 1. 1325(a)(5)(B).

Appellant contends that because Debtors' Plan only proposed payment of the pre-petition arrearage during the life of the Plan, with regular post-petition payments toward the remaining balance due, rather than payment of Appellant's entire claim during the life of the Plan, the Plan could not be confirmed. 11 U.S.C. § 1325(a)(5)(B). The Bankruptcy Court found section 1325(a)(5)(B) inapplicable because Debtors' proposed a "cure plan" as opposed to a "pay-off plan" and instead relied on section 1322(b)(3) to hold that Debtors' could cure the defaults giving rise to a lien on their residence. Appellant disputes this conclusion of law, I agree that it is erroneous.

Confirmation of a Chapter 13 Plan is required if the Plan meets all the requirements of section 1325. 11 U.S.C. § 1325. One of the requirements of section 1325 is that the contents of the Plan comply with section 1322. 11 U.S.C. 1325(a)(1). Generally, sections 1322(b)(3) and (5) allow debtors to cure pre-petition mortgage defaults. 11 U.S.C. §§ 1322(b)(3), (5). "Section 1322(b)(3) allows for curing default on short-term mortgages, while [section] 1322(b)(5) allows for curing long-term mortgages on which the final payment is due after the due date of the final payment under the Chapter 13 plan." *United States v. Easley*, 216 B.R. 543, 546 (W.D.Va.1997). The Truitt mortgage is long-term, thus, section 1322(b)(5), not section 1322(b)(3), is applicable.

Section 1322(b)(5) allows "for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any ... secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). As discussed above, Debtors cannot cure the Truitt mortgage default while retaining title to the property, thus, the default will not be cured within a reasonable time. For this reason, the Plan should not have been confirmed, however, because the entire Chapter 13 case should have been dismissed pursuant to section 1307(c), *see supra* Part III.A.3, I will simply vacate the Bankruptcy Court's Order dated August 18, 1998.

### 2. 1325(a)(6).

Section 1325(a)(6) requires a Chapter 13 Plan to be "feasible." This requires that it be reasonably likely for Debtors' "to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). Appellant contends that Debtors' Plan should not have been confirmed because it is unlikely that Debtors will be able to fund their heavily back-loaded Plan.

 Feasibility is a question of fact which cannot be overturned unless clearly erroneous. *Federal Nat'l Mortgage Assoc. v. Edward A. Ferreira*, 223 B.R. 258, 262 (D.R.I.1998) (citing *Peerless Ins. Co. v. Rivera*, 208 B.R. 313, 315 (D.R.I.1997)). The Bankruptcy Court found both Debtors hoped to increase their income and took significant steps to do so by returning to school and finding new employment. "[A] plan showing a small deficit between current income and expenses may be feasible if there is a reasonable likelihood that the debtor's income will increase or that his expenses will diminish." *Ferreira*, 223 B.R. at 263. It cannot be said that this factual finding was clearly erroneous, however, because the entire Chapter 13 case should have been dismissed pursuant to section 1307(c), *see supra* Part III.A.3, I will simply vacate the Bankruptcy Court's Order dated August 18, 1998.

## VI. CONCLUSION.

For the foregoing reasons, I find that the Bankruptcy Court abused its discretion in the following manner: (1) failing to lift the automatic stay for "cause" pursuant to section 362(d)(1); (2) failing to determine the Debtors' motives and the availability of comparable housing pursuant 362(d)(2); and (3) failing to dismiss Debtors' Chapter 13 petition for "cause" pursuant to section 1307(c). The Order of the Bankruptcy Court dated January 7, 1998 is reversed and remanded with directions to dismiss Debtors' Chapter 13 petition for "cause" pursuant to section 1307.

I further find that the Bankruptcy Court committed reversible error in overruling Appellant's Objection to Debtor's Chapter 13

plan and holding that Debtors were capable of curing the Truitt mortgage default pursuant to section 1322(b)(3). Yet, because the entire Chapter 13 case should have been dismissed pursuant to section 1307(c), *see supra* Part III.A.3, I will simply vacate the Bankruptcy Court's Order dated August 18, 1998.